**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 20-2833
_____

ESTATE OF JOSEPH MAGLIOLI; BERNARD
MAGLIOLI; DANTE MAGLIOLI; ESTATE OF DALE
PETRY; CHRISTOPHER PETRY

v.

ALLIANCE HC HOLDINGS LLC, d/b/a Andover Subacute
& Rehabilitation I; ALLIANCE HC II LLC, d/b/a Andover
Subacute & Rehabilitation II (Alliance Healthcare being
improperly pleaded by name and as a separate entity);
CHAIM SCHEINBAUM; LOUIS SCHWARTZ; JOHN AND
JANE DOES 1-10; ABC AND XYZ CORPORATIONS 1-10

> Alliance HC Holdings, LLC, d/b/a Andover
> Subacute & Rehabilitation I; Alliance HC II
> LLC, d/b/a Andover Subacute & Rehabilitation
> II (Alliance Healthcare being improperly
> pleaded by name and as a separate entity);
> Chaim "Mutty" Scheinbaum; Louis Schwartz,
>
> Appellants

_____

No. 20-2834

ESTATE OF WANDA KAEGI; VICTOR KAEGI; ESTATE
OF STEPHEN BLAINE; SHARON FARRELL

v.

ALLIANCE HC HOLDINGS LLC, d/b/a Andover Subacute
& Rehabilitation I; ALLIANCE HC II LLC, d/b/a Andover
Subacute & Rehabilitation II (Alliance Healthcare being
improperly pleaded by name and as a separate entity);
CHAIM "MUTTY" SCHEINBAUM; LOUIS SCHWARTZ;
JOHN and JANE DOES 1-10; ABC and XYZ CORPS 1-10

Alliance HC Holdings, LLC, d/b/a Andover
Subacute & Rehabilitation I; Alliance HC II
LLC, d/b/a Andover Subacute & Rehabilitation
II (Alliance Healthcare being improperly
pleaded by name and as a separate entity);
Chaim "Mutty" Scheinbaum; Louis Schwartz,[*]

Appellants

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Nos. 2-20-cv-06605 and 2-20-cv-06985)
District Judge: Honorable Kevin McNulty

_____

[*] The Clerk of the Court is directed to amend the official
caption to conform to the listing of parties above.

2

———————

Argued: June 23, 2021

Before: CHAGARES, PORTER, and ROTH,
*Circuit Judges*.

(Filed: October 20, 2021)
———————

Salvatore C. Martino
Malinda A. Miller
Lewis Brisbois Bisgaard & Smith LLP
One Riverfront Plaza, Suite 800
Newark, New Jersey 07102

Jeffry A. Miller
Lann G. McIntyre **[ARGUED]**
Lewis Brisbois Bisgaard & Smith LLP
550 West C Street, Suite 1700
San Diego, California 92101

 *Counsel for Appellants Alliance HC Holdings LLC,*
 *Alliance HC II LLC, Chaim Scheinbaum, and Louis*
 *Schwartz*

Andrew Kim
William M. Jay
Goodwin Procter LLP
1900 N Street, N.W.
Washington, D.C. 20036

 *Counsel for Amicus Appellant DRI, Inc.*

3

Russell L. Hewit
Ryan A. Notarangelo
Dughi, Hewit & Domalewski, P.C.
340 North Avenue
Cranford, NJ 07016

     *Counsel for Amicus Appellant Hackensack Meridian Health*

Melissa A. Murphy-Petros
Wilson Elser Moskowitz Edelman & Dicker LLP
55 West Monroe Street, Suite 3800
Chicago, Illinois 60603

Lori Rosen Semlies
Wilson Elser Moskowitz Edelman & Dicker LLP
1133 Westchester Avenue
White Plains, New York 10604

Daniel E. Tranen
Wilson Elser Moskowitz Edelman & Dicker LLP
7751 Carondelet Avenue, Suite 203
Clayton, Missouri 63105

     *Counsel for Amici Appellants Cambridge*
     *Rehabilitation & Healthcare Center, Oakland*
     *Rehabilitation & Healthcare Center, and Willow*
     *Springs Rehabilitation & Healthcare Center*

William M. Kelleher
Neil R. Lapinski **[ARGUED]**
Phillip A. Giordano
Gordon, Fournaris & Mammarella, P.A.
1925 Lovering Avenue
Wilmington, DE 19806

Daniel G.P. Marchese
The Marchese Law Firm, LLC
93 Spring Street, Suite 300
Newton, NJ 07860

>    *Counsel for Appellees Estate of Wanda Kaegi, Victor*
>    *Kaegi, Estate of Stephen Blaine, Sharon Farrell,*
>    *Estate of Joseph Maglioli, Bernard Maglioli, Dante*
>    *Maglioli, Estate of Dale Petry, and Christopher Petry*

Adam R. Pulver
Allison M. Zieve
Scott L. Nelson
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009

>    *Counsel for Amicus Appellee Public Citizen Inc.*

_____

OPINION OF THE COURT
_____

PORTER, *Circuit Judge*.

5

Our Constitution divides powers between the national government and the states. Powers not delegated to the national government remain with the people in the states. *See Bond v. United States*, 564 U.S. 211, 221 (2011); The Federalist No. 45 (James Madison). The pandemic has tested our federal system, but this case confirms its resilience. The defendants invite us to assert the "judicial Power of the United States" over a matter that belongs to the states. U.S. Const. art. III. We decline that invitation. We will not exercise power that the Constitution and Congress have not given us. There is no COVID-19 exception to federalism.

Joseph Maglioli, Dale Petry, Wanda Kaegi, and Stephen Blaine were residents of two different New Jersey nursing homes. Tragically, they died from COVID-19. Their estates claim that the nursing homes acted negligently in handling the COVID-19 pandemic, causing the residents' deaths. The estates commenced negligence and wrongful-death lawsuits against the nursing homes in state court on behalf of themselves, the family members of the deceased, and residents similarly situated. The nursing homes removed to federal court, but the District Court dismissed the cases for lack of subject-matter jurisdiction and remanded them to state court. The nursing homes appealed, arguing that the District Court has three independent grounds for federal jurisdiction: federal-officer removal, complete preemption of state law, and the presence of a substantial federal issue. We disagree. The estates have not invoked the power of the federal courts, and Congress has not given us power to take this case from the state court. So we will affirm the District Court's order dismissing the cases for lack of jurisdiction.

I

A

We begin with some background on the applicable law. In 2005, Congress passed the Public Readiness and Emergency Preparedness Act ("PREP Act"), 42 U.S.C. §§ 247d-6d, 247d-6e. The PREP Act protects certain covered individuals—such as pharmacies and drug manufacturers—from lawsuits during a public-health emergency. The Act lies dormant until invoked by the Secretary of the Department of Health and Human Services ("HHS"). If the Secretary deems a health threat a public-health emergency, he may publish a declaration in the Federal Register recommending certain "covered countermeasures." *Id.* § 247d-6d(b)(1). When the Secretary makes such a declaration, the covered individuals become immune from suit and liability from claims related to the administration of a covered countermeasure. *Id.* § 247d-6d(a)(1).

In March 2020, the Secretary issued a declaration under the PREP Act, declaring that COVID-19 is a public-health emergency. *See* Declaration Under the PREP Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15,198, 15,201 (Mar. 17, 2020). The Secretary recommended a series of covered countermeasures that includes drugs, devices, and products "used to treat, diagnose, cure, prevent, or mitigate COVID-19," subject to the PREP Act's definitions. *Id.* at 15,202. The Secretary has since amended the declaration seven times. *See* Seventh Amendment to Declaration Under the PREP Act for Medical Countermeasures Against COVID-19, 86 Fed. Reg. 14,462 (Mar. 16, 2021). HHS has also issued

advisory opinions and guidance letters on various issues related to the declaration.[1]

The Secretary controls the scope of immunity through the declaration and amendments, within the confines of the PREP Act. A covered person enjoys immunity from all claims arising under federal or state law that relate to the use of a covered countermeasure. 42 U.S.C. § 247d-6d(a)(1). Covered persons include manufacturers, distributors, program planners, and qualified persons, as well as their officials, agents, and employees. 85 Fed. Reg. at 15,201.

The scope of immunity is broad. Covered persons are immune from "any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure." 42 U.S.C. § 247d-6d(a)(2)(B). That includes claims relating to "the design, development, clinical testing or investigation, manufacture, labeling, distribution, formulation, packaging, marketing, promotion, sale, purchase, donation, dispensing, prescribing, administration, licensing, or use of such countermeasure." *Id.*

What happens to the claims blocked by PREP Act immunity? Congress did not leave those injured by covered countermeasures without recourse. The Act establishes a fund to compensate "eligible individuals for covered injuries directly caused by the administration or use of a covered countermeasure." *Id.* § 247d-6e(a). The Secretary has broad authority to issue regulations determining who and what types

---

[1] *See Public Readiness and Emergency Preparedness Act*, Public Health Emergency (July 8, 2021), https://perma.cc/S576-NXRX.

of injuries qualify for compensation under the fund. *Id.* § 247d-6e(b)(4)–(5).

There is one exception to this statutory immunity. The PREP Act provides "an exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct." *Id.* § 247d-6d(d)(1). "Willful misconduct" is in turn defined as "an act or omission that is taken—(i) intentionally to achieve a wrongful purpose; (ii) knowingly without legal or factual justification; and (iii) in disregard of a known or obvious risk that is so great as to make it highly probable that the harm will outweigh the benefit." *Id.* § 247d-6d(c)(1)(A). The Act clarifies that willful misconduct "shall be construed as establishing a standard for liability that is more stringent than a standard of negligence in any form or recklessness." *Id.* § 247d-6d(c)(1)(B). Notwithstanding the statutory definition, the Secretary may issue regulations that further restrict what acts or omissions qualify as willful misconduct. *Id.* § 247d-6d(c)(2)(A).

B

These wrongful-death actions arise from the treatment of residents at two nursing homes in New Jersey. The plaintiffs' two complaints state the same five claims: (1) negligence—wrongful death as to the named defendants; (2) negligence—wrongful death as to unnamed defendants; (3) negligence—ordinary negligence as to unnamed non-medical employees of the nursing homes and medical malpractice as to all unknown medical professionals; (4) negligence as proximate cause of the residents' injuries; and (5) punitive damages.

9

The estates allege that the residents' deaths "were a direct result of [the nursing homes'] failures to take measures to protect them at the facilities from the deadly Covid-19 virus, and/or medical malpractice." App. 119, 176. For example, the estates claim the nursing homes acted negligently by failing to monitor food preparation, failing to provide personal protective equipment, failing to timely diagnose and properly treat the disease, and permitting visitors and employees to enter the facilities without taking their temperatures or requiring them to wear masks.

Nursing homes across the country face similar lawsuits. The story in all of these cases is essentially the same. Estates of deceased nursing-home residents sue the nursing homes in state court, alleging that the nursing homes negligently handled COVID-19. The nursing homes remove to federal court on the basis of a combination of federal-officer removal, complete preemption, and a substantial federal issue. Nearly every federal district court to confront these cases has dismissed for

lack of jurisdiction and remanded to the state court.[2] We appear to be the first circuit court to decide these issues.

## II

The issue here is whether the District Court had subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1442. Because the nursing homes appeal the issue of federal-officer removal, we may also review the parts of the District Court's order rejecting removal based on complete preemption and a substantial federal issue. *See* 28 U.S.C. § 1447(d); *BP P. L. C. v. Mayor of Balt.*, 141 S. Ct. 1532, 1538 (2021). We review issues of subject-matter jurisdiction de novo, "including a court's decision to remand for a lack of jurisdiction." *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 810 (3d Cir. 2016).

## III

A preliminary issue in this case is deference to HHS interpretations of the PREP Act under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). The nursing homes urge us to defer to the agency's interpretations, which generally favor removal in this case. We decline to do so.

HHS has interpreted the PREP Act in the Secretary's amended declaration and in advisory opinions from the general counsel. For example, the fifth amendment to the declaration claims that "[t]he plain language of the PREP Act makes clear that there is complete preemption of state law." Fifth Amendment to Declaration Under the Public Readiness and Emergency Preparedness Act, 86 Fed. Reg. 7,872, 7,874 (Feb. 2, 2021). Similarly, the fourth amendment to the declaration asserts that the PREP Act raises "substantial federal legal and

11

[2] *See, e.g.*, *Martinez v. Spruce Holdings, LLC*, No. 21-CV-0739 AWI SAB, 2021 WL 3883704 (E.D. Cal. Aug. 31, 2021); *Dorsett v. Highlands Lake Ctr., LLC*, No. 21-CV-0910-KKM-AEP, 2021 WL 3879231 (M.D. Fla. Aug. 31, 2021); *David Jones v. Legacy Mgmt. Grp. of La. LLC*, No. 21-CV-00838, 2021 WL 3416993 (W.D. La. July 7, 2021); *Acra v. Cal. Magnolia Convalescent Hosp., Inc.*, No. EDCV 21-898, 2021 WL 2769041 (C.D. Cal. July 1, 2021); *Gwilt v. Harvard Square Ret. & Assisted Living*, No. 21-CV-0472, 2021 WL 2373768 (D. Colo. June 30, 2021); *Elliot v. Care Inn of Edna LLC*, No. 20-CV-3185, 2021 WL 2688600 (N.D. Tex. June 30, 2021); *Brannon v. J. Ori, LLC*, Nos. 21-CV-00058, 21-CV-00065, 2021 WL 2339196 (E.D. Tex. June 8, 2021); *Rae ex rel. Montisano v. Anza Healthcare Inc.*, No. 21-CV-287, 2021 WL 2290776 (S.D. Cal. June 4, 2021); *Shapnik v. Hebrew Home for Aged at Riverdale*, No. 20-CV-6774, 2021 WL 1614818 (S.D.N.Y. Apr. 26, 2021); *Bolton v. Gallatin Ctr. for Rehab. & Healing, LLC*, No. 20-CV-00683, 2021 WL 1561306 (M.D. Tenn. Apr. 21, 2021); *Perez ex rel. Est. of Lozano v. Se. SNF LLC*, Nos. SA-21-CV-00088, SA-21-CV-00089, SA-21-CV-00090, 2021 WL 1381232 (W.D. Tex. Apr. 12, 2021); *Lopez v. Advanced HCS, LLC*, No. 21-CV-00470, 2021 WL 1259302 (N.D. Tex. Apr. 5, 2021); *Est. of Cowan v. LP Columbia KY, LLC*, No. 20-CV-00118, 2021 WL 1225965 (W.D. Ky. Mar. 31, 2021); *Wright v. Encompass Health Rehab. Hosp. of Columbia, Inc.*, No. 20-02636, 2021 WL 1177440 (D.S.C. Mar. 29, 2021); *Lopez v. Life Care Ctrs. of Am., Inc.*, No. 20-0958, 2021 WL 1121034 (D.N.M. Mar. 24, 2021); *Est. of Jones ex rel. Brown v. St. Jude Operating Co., LLC*, No. 20-CV-1088, 2021 WL 886217 (D. Or. Mar. 8, 2021); *Saunders v. Big Blue Healthcare, Inc.*, No. 20-CV-02608, 2021 WL 764567 (D. Kan. Feb. 26, 2021); *Dupervil v.*

policy interests within the meaning of *Grable & Sons Metal Products, Inc. v. Darue Eng'g. & Mf'g.*, 545 U.S. 308 (2005)." Fourth Amendment to the Declaration Under the Public Readiness and Emergency Preparedness Act, 85 Fed. Reg. 79,190, 79,197 (Dec. 9, 2020). These views are lightly developed in some of the advisory opinions.[3]

Deference is not owed to these interpretations for the simple reason that HHS is not delegated authority under the PREP Act to interpret the scope of federal courts' jurisdiction. To the extent the PREP Act delegates authority to the Secretary, it "does not empower the Secretary to regulate the scope of the judicial power vested by the statute." *Adams Fruit Co. v. Barrett*, 494 U.S. 638, 650 (1990). The Secretary cites § 247d-6d(b)(7), claiming that "Congress delegated to [the Secretary] the authority to strike the appropriate Federal-state balance." 85 Fed. Reg. at 79,198. However, § 247d-6d(b)(7) merely strips courts of jurisdiction to review the Secretary's determinations under the PREP Act. The Act does not grant the Secretary authority to opine on the scope of federal

---

*All. Health Operations, LCC*, No. 20-CV-4042, 2021 WL 355137 (E.D.N.Y. Feb. 2, 2021); *Est. of Smith ex rel. Smith v. Bristol at Tampa Rehab. & Nursing Ctr., LLC*, No. 20-CV-2798-T-60SPF, 2021 WL 100376 (M.D. Fla. Jan. 12, 2021); *Sherod v. Comprehensive Healthcare Mgmt. Servs., LLC*, No. 20-CV-1198, 2020 WL 6140474 (W.D. Pa. Oct. 16, 2020). *But see Garcia v. Welltower OpCo Grp. LLC*, No. SACV 20-02250, 2021 WL 492581 (C.D. Cal. Feb. 10, 2021) (retaining jurisdiction and denying a motion to remand).

[3] *See* U.S. Dep't of Health and Human Servs., *Advisory Opinion on the PREP Act* (Apr. 17, 2020) (modified May 19, 2020), https://perma.cc/A73S-3DY6.

jurisdiction. The Secretary's position on the jurisdiction of the federal courts is not entitled to deference under *Chevron*. *See In re Kaiser Aluminum Corp.*, 456 F.3d 328, 344 (3d Cir. 2006).

The nursing homes have cited no decisions in which a federal court of appeals deferred to an agency's interpretation of federal-court jurisdiction, and we are aware of none. Rather, "[t]he scope of judicial review . . . is hardly the kind of question that [we] presume[] that Congress implicitly delegated to an agency." *Smith v. Berryhill*, 139 S. Ct. 1765, 1778 (2019). "[I]t is fundamental 'that an agency may not bootstrap itself into an area in which it has no jurisdiction,'" such as "the scope of the judicial power vested by the statute." *Id.* (internal quotation marks omitted) (quoting *Adams Fruit*, 494 U.S. at 650). Federal courts routinely conclude that no deference is owed such interpretations. *See, e.g.*, *Texas v. EPA*, 829 F.3d 405, 417 (5th Cir. 2016) ("Because 'the determination of our jurisdiction is exclusively for the court to decide,' we do not defer to the agency's interpretation of this section." (quoting *Lopez–Elias v. Reno*, 209 F.3d 788, 791 (5th Cir. 2000))); *Our Children's Earth Found. v. EPA*, 527 F.3d 842, 846 n.3 (9th Cir. 2008) ("The Agency's position on jurisdiction is not entitled to deference under *Chevron* . . . ."); *Allegheny Def. Project v. FERC*, 964 F.3d 1, 11 (D.C. Cir. 2020) ("Federal agencies do not administer and have no relevant expertise in enforcing the boundaries of the courts' jurisdiction.").

Nor are the agency's interpretations entitled to respect under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). Again, the scope of federal courts' jurisdiction is a legal issue that is the province of the courts, not agencies. *See In re Kaiser*, 456 F.3d at 344. Even if HHS has something valuable to say on the matter, we do not find it in these statements. The fourth and

fifth amendments do not interpret the statutory text, cite any case law (besides *Grable*), or provide any legal reasoning. The general counsel's advisory opinions are likewise unpersuasive. The Secretary's conclusory assertions on the scope of our jurisdiction thus lack the "power to persuade." *Skidmore*, 323 U.S. at 140. We now turn to the discussion of jurisdiction in this case, unclouded by HHS's views.

IV

The federal-officer-removal statute permits certain officers of the United States to remove actions to federal court. 28 U.S.C. § 1442(a)(1). To remove a case under § 1442(a)(1), a defendant must meet four requirements: (1) the defendant must be a "person" within the meaning of the statute; (2) the plaintiff's claims must be based upon the defendant "acting under" the United States, its agencies, or its officers; (3) the plaintiff's claims against the defendant must be "for or relating to" an act under color of federal office; and (4) the defendant must raise a colorable federal defense to the plaintiff's claims. *Id.*; *see also Papp*, 842 F.3d at 812. The estates acknowledge that the nursing homes meet the first requirement, as they are "persons" within the meaning of § 1442(a)(1). The disputed issue is the second, "acting under" requirement. The District Court ruled that the nursing homes were not "acting under" the United States, its agencies, or its officers. Moreover, the court said that, even assuming the first two requirements were met, the estates' claims were not "for, or relating to" the nursing homes' acts under color of federal office. We need not reach that issue. We will affirm because the nursing homes were not "acting under" the United States, its agencies, or its officers.

The nursing homes are private parties, not federal actors. They may nevertheless invoke federal-officer removal

15

if they show they were "acting under" federal officers. *See Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007). The phrase "acting under" is broad, and we construe it liberally. *Id.* But the phrase is not boundless. Merely complying with federal laws and regulations is not "acting under" a federal officer for purposes of federal-officer removal. *Id.* at 153. Even a firm subject to detailed regulations and whose "activities are highly supervised and monitored" is not "acting under" a federal officer. *Id.* The nursing homes must demonstrate something beyond regulation or compliance. They must show that their actions "involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." *Id.* at 152.

Government contractors are a classic example. A private contractor acts under a federal officer when it "help[s] the Government to produce an item that it needs." *Id.* at 153; *see also Papp*, 842 F.3d at 812–13. Similarly, a nonprofit community defender acts under a federal officer by representing indigent federal defendants. *In re Commonwealth's Motion to Appoint Couns. Against or Directed to Def. Ass'n of Phila.*, 790 F.3d 457, 469 (3d Cir. 2015). The community defender does more than follow federal law. *Id.* It is delegated authority to represent defendants under the Criminal Justice Act and 18 U.S.C. § 3599. *Id.* It must adopt bylaws and codes of conduct consistent with federal public-defender organizations. *Id.* It must follow detailed financial guidelines as a condition of receiving federal grant money, and it must return unspent funds to the federal government. *Id.* Its employees cannot practice law outside of their official duties without the federal government's permission. *Id.* at 469–70. And, by representing indigent federal defendants, the community defender "provides a

service the federal government would itself otherwise have to provide." *Id.* at 469.

The nursing homes here do not assist or help carry out the duties of a federal superior. They are not government contractors. *See Papp*, 842 F.3d at 812–13. They do not have the close relationship with the federal government that we recognized in the nonprofit community defenders. They are not delegated federal authority, nor do they provide a service that the federal government would otherwise provide. *See Def. Ass'n of Phila.*, 790 F.3d at 469. The nursing homes argue that they are heavily regulated, pointing to publications from the Centers for Medicare & Medicaid Services ("CMS") and the Centers for Disease Control and Prevention ("CDC"). The nursing homes call those publications "comprehensive directives," but they are more aptly described as guidance. Appellants' Br. 29 (emphasis omitted). In its February 6, 2020 publication, "CMS strongly urge[d] the review of CDC's guidance and encourages facilities to review their own infection prevention and control policies and practices to prevent the spread of infection."[4] The CDC publication from March 17, 2020, states a similar purpose: "This document offers a series of strategies or options to optimize supplies of eye protection in healthcare settings when there is limited supply."[5] The publications that the nursing homes rely on

---

[4] Ctrs. for Medicare & Medicaid Servs., *Information for Healthcare Facilities Concerning 2019 Novel Coronavirus Illness (2019-nCoV)* (Feb. 6, 2020), https://perma.cc/8H4R-ZBZL.

[5] Ctrs. for Disease Control and Prevention, *Strategies for Optimizing the Supply of Eye Protection* (Mar. 17, 2020), https://perma.cc/QQ7K-3TK7.

contain verbiage denoting guidance, not control. The nursing homes thus have not shown that they have "an unusually close" relationship with CMS or CDC. *Watson*, 551 U.S. at 153.

Even assuming the nursing homes are subject to intense regulation, that alone does not mean they were "acting under" federal officers. In *Watson*, cigarette-manufacturer Philip Morris was subject to far more intense regulation than the nursing homes experience here. *See id.* at 154–56. The Federal Trade Commission set detailed rules concerning Philip Morris's manufacturing, testing, labeling, and advertising of cigarettes. *Id.* at 155–56. The Supreme Court said even the close regulation, without more, did not bring Philip Morris under the scope of the federal-officer-removal statute. *Id.* at 157.

The nursing homes invite us to apply a "regulation plus" doctrine. They argue that "a more specific level of regulation" may permit removal even though "mere regulation" does not. Appellants' Br. 25. We cannot reconcile that notion with *Watson*. A "more specific level of regulation" is simply a difference in the degree of regulatory detail. Appellants' Br. 25. And the Supreme Court said that "differences in the degree of regulatory detail or supervision cannot by themselves transform . . . regulatory *compliance* into the kind of assistance that might bring the [agency] within the scope of the statutory phrase '*acting under*' a federal 'officer.'" *Watson*, 551 U.S. at 157 (quoting 28 U.S.C. § 1442(a)(1)). Even if "regulation plus" were a proper heuristic, the "plus" cannot merely be more regulation. *See id.* The best evidence the nursing homes muster showing something beyond regulation is that the Cybersecurity & Infrastructure Security Agency designated nursing homes as

essential critical infrastructure.[6] But that is also true of doctors, weather forecasters, clergy, farmers, bus drivers, plumbers, dry cleaners, and many other workers.[7] Congress did not deputize all of these private-sector workers as federal officers.

V

The nursing homes next argue that complete federal preemption of the estates' claims warrants removal to federal court. They argue that the PREP Act is so pervasive that the estates' state-law negligence claims are *really* federal claims under the PREP Act, and are thus removable to federal court. We disagree.

Under 28 U.S.C. § 1441(a), a defendant may remove a civil action to federal court only if the plaintiff could have originally filed the action in federal court. If the parties are not diverse, the complaint must satisfy federal-question jurisdiction. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Under the well-pleaded-complaint rule, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Id.* A federal defense "ordinarily does not appear on the face of the well-pleaded complaint, and, therefore, usually is insufficient to warrant removal to federal court." *Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 353 (3d Cir. 1995). By relying exclusively

---

[6] Cybersecurity & Infrastructure Sec. Agency, Advisory Memorandum on Ensuring Essential Critical Infrastructure Workers' Ability to Work During the Covid-19 Response 7 (Dec. 16, 2020), https://perma.cc/B5GP-9LJK.
[7] *Id.* at 7, 10, 17, 19, 23.

on state law, a plaintiff may typically avoid federal court. *Caterpillar*, 482 U.S. at 392.

Federal preemption is a defense to state-law claims. We derive the preemption doctrine from the Supremacy Clause, which provides that federal laws made pursuant to the U.S. Constitution "shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." U.S. Const. art. VI. Where federal law displaces state law, courts must apply federal law. *See Arizona v. United States*, 567 U.S. 387, 398–99 (2012). Federal law may displace state law in a variety of ways, but we need not discuss them here.[8] What matters in this case is that the nursing homes raise federal preemption as a *defense* to state law. They argue that the PREP Act displaces the estates' state-law claims, and thus courts must apply the PREP Act rather than New Jersey law. Perhaps, but it is not for us to decide. The issue is whether *making* that preemption argument gets the nursing homes into federal court. "The fact that a defendant might ultimately prove that a plaintiff's claims are pre-empted . . .

---

[8] This is not an ordinary preemption case. Because "complete preemption is a distinct concept from ordinary preemption," we do not engage in an ordinary preemption analysis. *Ry. Lab. Execs. Ass'n v. Pittsburgh & Lake Erie R.R.*, 858 F.2d 936, 941 (3d Cir. 1988). Instead, our task is to determine whether the District Court has removal jurisdiction over the action. Complete preemption is thus best understood as a *jurisdictional* doctrine rather than an ordinary preemption doctrine. It fits under the heading of removal jurisdiction as a "corollary of the well-pleaded complaint rule." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987).

does not establish that they are removable to federal court." *Caterpillar*, 482 U.S. at 398.

This is where complete preemption comes in. Ordinarily, a defense of federal preemption does not provide a basis for removal because it does not appear on the face of the well-pleaded complaint. *See id.* at 392–93. The complete-preemption doctrine provides that a federal question *does* appear on the face of the complaint when Congress "so completely pre-empt[s] a particular area that any civil complaint raising [the] select group of claims is necessarily federal in character." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64 (1987). In other words, a federal statute's preemptive force can be so great that we treat a displaced state-law claim as if it were a federal claim. So, although a garden-variety preemption defense would not satisfy the well-pleaded-complaint rule, a completely preempted state-law claim does. *See Dukes*, 57 F.3d at 354.

Removal is proper only if the federal statute "wholly displaces the state-law cause of action through complete pre-emption." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003). A statute is completely preemptive if it "provide[s] the exclusive cause of action for the claim asserted and also set[s] forth procedures and remedies governing that cause of action." *Id.* As applied to this case, we ask whether the PREP Act "provide[s] the exclusive cause of action" for negligence claims against the nursing homes.[9] *Id.* at 9. We can break this

_____

[9] Before the Supreme Court decided *Beneficial National Bank*, our Court required a second step in the analysis. If one of the defendant's claims fell within an exclusive federal cause of action, we would then ask "whether there [was] a clear indication of a Congressional intention to permit removal

21

question into two parts: (1) Does the PREP Act create an exclusive federal cause of action? If it does, (2) do any of the estates' claims fall within the scope of that cause of action? If they do, the estates' claims are completely preempted and removable to federal court. Here, the PREP Act creates an exclusive cause of action for willful misconduct. But the estates allege only negligence, not willful misconduct. The estates' negligence claims thus do not fall within scope of the exclusive federal cause of action. They are not completely preempted, so they belong in state court.

A

Complete preemption is rare. The Supreme Court has recognized only three completely preemptive statutes: the Employee Retirement Income Security Act ("ERISA"), the Labor Management Relations Act ("LMRA"), and the National Bank Act. Each of those statutes contains an exclusive federal cause of action. But the causes of action in those three statutes were not *explicitly* exclusive—the Court

---

despite the plaintiff's exclusive reliance on state law." *Ry. Lab. Execs. Ass'n*, 858 F.2d at 942. Both parties invite us to apply that second step, but *Beneficial National Bank* severed that part of the analysis. "[T]he proper inquiry focuses on whether Congress intended the federal cause of action to be *exclusive* rather than on whether Congress intended that the cause of action be *removable*." *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 9 n.5 (2003) (emphasis added). We thus focus on whether the PREP Act provides the exclusive cause of action for negligence against the nursing homes. *See id.* at 9. "If so, then the cause of action necessarily arises under federal law and the case is removable. If not, then the complaint does not arise under federal law and is not removable." *Id.*

inferred exclusivity. Here, our job is easier. The PREP Act explicitly creates "an exclusive Federal cause of action" for willful misconduct. 42 U.S.C. § 247d-6d(d)(1). The statute's plain language cuts through the dense analysis that we would otherwise employ to determine whether Congress intended to create an exclusive cause of action. To demonstrate the importance of the statutory language in this case, we begin with the Supreme Court's cases applying complete preemption.

The Supreme Court first recognized complete preemption in *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557 (1968). *Avco* concerned § 301 of the LMRA, which creates a cause of action for breach of contract between an employer and a union. *Id.* at 560–61. Section 301 says that "[s]uits for violation of contracts between an employer and a labor organization . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a). In *Avco*, an employer sued in a state court to enjoin a union from striking, claiming that the union was violating the "no-strike" clause in their collective-bargaining contract. *Avco Corp.*, 390 U.S. at 558. The Court held that the employer's claim was "controlled by federal substantive law even though it [was] brought in a state court." *Id.* at 560. Because the breach-of-contract claim was effectively a § 301 claim under the LMRA, the complaint stated a federal question and was removable to federal court. *Id.* at 560–61.

The Court next applied complete preemption in *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58 (1987). Section 502(a)(1)(B) of ERISA creates a cause of action for employees to recover benefits under a covered plan. *See* 29 U.S.C. § 1132(a)(1)(B). The Court held that § 502(a)(1)(B)

23

creates an exclusive federal cause of action for resolution of such disputes. *See Metro. Life Ins.*, 481 U.S. at 62–63. The Court reasoned that ERISA's language closely parallels that of the LMRA, so Congress must have intended the laws to have similar preemptive power.[10] *Id.* at 65. The Court was also persuaded by legislative history indicating ERISA should be regarded as similarly preemptive to § 301 of the LMRA. *Id.* at 65–66. The state claim, which fell under the scope of § 502(a)(1)(B) of ERISA, was thus "necessarily federal in character" and removable to federal court. *Id.* at 67.

In *Beneficial National Bank v. Anderson*, 539 U.S. 1 (2003), the Court extended complete preemption to a third

---

[10] Section 301(a) of the LMRA provides:

> Suits for violation of contracts between an employer and a labor organization . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). Compare § 301(a) of the LMRA to § 501(a)(1)(B) of ERISA:

> A civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . .

29 U.S.C. § 1132(a)(1)(B).

statute, the National Bank Act. Section 85 of the National Bank Act governs the rate of interest that a national bank may lawfully charge, and § 86 provides an exclusive remedy against a national bank charging excessive interest. *See* 12 U.S.C. §§ 85, 86. Section 86 says, "In case the greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover back, in an action in the nature of an action of debt, twice the amount of the interest thus paid . . . ." *Id.* § 86. The Court framed the issue narrowly: "Only if Congress intended § 86 to provide the exclusive cause of action for usury claims against national banks would the statute be comparable to the provisions that we construed in the *Avco* and *Metropolitan Life* cases." *Beneficial Nat'l Bank*, 539 U.S. at 9. The Court relied on a long line of precedent holding that § 86 created an exclusive federal cause of action. *See id.* at 10. The Court also determined that "the special nature of federally chartered banks" required a uniform rule. *Id.* at 10–11 (citing *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 431 (1819)). Thus, a state-law claim for usury against a national bank actually states a federal claim under §§ 85 and 86 and may be removed to federal court. *Id.* at 11.

In all three cases, the Court inferred that the cause of action was exclusive. The three statutes unambiguously created causes of action. But they did not unambiguously make them exclusive. Rather, the Court reasoned that the significant preemptive force of the statutes indicated congressional intent to create an exclusive federal cause of action. *See Beneficial Nat. Bank*, 539 U.S. at 11; *Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 23 (1983). The PREP Act is different.

The PREP Act unambiguously creates an *exclusive* federal cause of action. For nearly all injuries caused by

covered countermeasures falling under the Act, the Secretary has the sole authority to administer and provide compensation from the designated fund. *See* 42 U.S.C. § 247d-6e(a)–(b). Congress carved out a narrow exception "for an exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct." *Id.* § 247d-6d(d)(1). A plaintiff asserting a willful-misconduct claim must first exhaust administrative remedies, and may then bring the claim only in the U.S. District Court for the District of Columbia. *Id.* §§ 247d-6e(d)(1), 247d-6d(e)(1). A plaintiff may choose to accept compensation from the fund instead of filing suit in federal court. *Id.* § 247d-6e(d)(5). If the plaintiff chooses to file suit, he must "plead with particularity each element of [his] claim." *Id.* § 247d-6d(e)(3).

The PREP Act's language easily satisfies the standard for complete preemption of particular causes of action. It provides an "exclusive cause of action . . . and also set[s] forth procedures and remedies governing that cause of action." *Beneficial Nat'l Bank*, 539 U.S. at 8. The estates admit as much. Where the PREP Act creates a cause of action, the estates say "that claim would be one for willful misconduct on the part of a covered person" that meets the statutory elements. Appellees' Br. 42. The Supreme Court has relied on the complete preemptive force of a statute to infer congressional intent to create an exclusive federal cause of action. Here, we have a better source of congressional intent: the words of Congress. Again, our analysis is straightforward. Congress said the cause of action for willful misconduct is exclusive, so it is.

B

Just because the PREP Act creates an exclusive federal cause of action does not mean it completely preempts the estates' state-law claims. To remove to federal court, the nursing homes also must show that the state-law claims fall within the scope of the exclusive federal cause of action. In other words, we must determine whether the estates could have brought their claims under the PREP Act's cause of action for willful misconduct.[11] *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004).

A claim for willful misconduct under the PREP Act has several elements. The plaintiff must show (1) "an act or omission," that is taken (2) "intentionally to achieve a wrongful purpose," (3) "knowingly without legal or factual justification," and (4) "in disregard of a known or obvious risk that is so great as to make it highly probable that the harm will

---

[11] In the ERISA context, whether a state-law claims fall within the scope of the exclusive federal cause of action is itself a two-part question. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004). "[A] claim is completely preempted . . . under ERISA § 502(a) only if: (1) the plaintiff could have brought the claim under § 502(a); *and* (2) no other independent legal duty supports the plaintiff's claim." *N.J. Carpenters & the Trustees Thereof v. Tishman Const. Corp. of N.J.*, 760 F.3d 297, 303 (3d Cir. 2014). Some courts have extended that two-part test to statutes other than ERISA. *See, e.g.*, *Hawaii ex rel. Louie v. HSBC Bank Nevada, N.A.*, 761 F.3d 1027, 1037–38 (9th Cir. 2014). Because we conclude that the estates could not have brought their claims under the PREP Act's willful-misconduct section, we need not determine whether an independent legal duty supports their claims.

outweigh the benefit." 42 U.S.C. § 247d-6d(c)(1)(A). Moreover, the action must be (5) "against a covered person," (6) "for death or serious physical injury" that is (7) "proximately caused by [the covered person's] willful misconduct." *Id.* § 247d-6d(d)(1). The plaintiff must prove these elements by "clear and convincing evidence." *Id.* § 247d-6d(c)(3). The PREP Act also provides a rule of construction: the willful-misconduct requirement "shall be construed as establishing a standard for liability that is more stringent than a standard of negligence in any form or recklessness." *Id.* § 247d-6d(c)(1)(B). Congress's meticulous definition guides our analysis.

The estates allege negligence, not willful misconduct. The two complaints each assert four counts of negligence, plus a claim for punitive damages. A claim for negligence under New Jersey law requires the familiar elements of duty, breach, causation, and damages. *Townsend v. Pierre*, 110 A.3d 52, 61 (N.J. 2015). In contrast, a claim for willful misconduct under the PREP Act requires wrongful intent, knowledge that the act lacked legal or factual justification, and disregard of a "known or obvious risk that is so great as to make it highly probable that the harm will outweigh the benefit." 42 U.S.C. § 247d-6d(c)(1)(A). The rule of construction removes any doubt: The PREP Act's cause of action for willful misconduct "establish[es] a standard for liability that is more stringent than a standard of negligence in any form or recklessness." *Id.* § 247d-6d(c)(1)(B).

Willful misconduct is a separate cause of action from negligence. The elements of the state cause of action need not "precisely duplicate" the elements of the federal cause of action for complete preemption to apply. *Davila*, 542 U.S. at 216. But complete preemption does not apply when federal law

creates an entirely *different* cause of action from the state claims in the complaint. *See DiFelice v. Aetna U.S. Healthcare*, 346 F.3d 442, 452–53 (3d Cir. 2003). Congress could have created a cause of action for negligence or general tort liability. It did not. Just as intentional torts, strict liability, and negligence are independent causes of action, so too willful misconduct under the PREP Act is an independent cause of action. *See* Restatement (Second) of Torts § 519 cmt. d (Am. L. Inst. 1977).

Nevertheless, we must look beyond the estates' claims. The question is whether the estates' allegations fall within the scope of the PREP Act's cause of action—"that is, whether the claims *could have* been brought under that section." *DiFelice*, 346 F.3d at 446 (emphasis added). But nowhere in their complaints do the estates allege or imply that the nursing homes acted "intentionally to achieve a wrongful purpose." 42 U.S.C. § 247d-6d(c)(1)(A)(i). Neither do they claim that the nursing homes acted "knowingly without legal or factual justification." *Id.* § 247d-6d(c)(1)(A)(ii). The closest the estates come to a willful-misconduct allegation is their request

for punitive damages.[12] Employing standard language for a punitive-damages request, the estates allege the nursing homes engaged in "conduct that was grossly reckless, willful, and wanton." App. 120; App. 176. But we cannot infer from that fleeting statement that the estates allege the nursing homes acted with intent "to achieve a wrongful purpose," or with knowledge that their actions lacked "legal or factual justification." 42 U.S.C. § 247d-6d(c)(1)(A). Thus, the estates could not have brought their claims under § 247d-6d(d)(1) of the PREP Act. *See DiFelice*, 346 F.3d at 446.

C

We address one more argument concerning complete preemption. The nursing homes argue that the PREP Act's compensation fund—not just the willful-misconduct cause of action—completely preempts the estates' negligence claims. That argument is even less plausible.

---

[12] Under New Jersey law, an independent count for punitive damages may not be cognizable. *See* N.J. Stat. Ann. § 2A:15-5.13 (1995); *In re Est. of Stockdale*, 953 A.2d 454, 473 (N.J. 2008); *Giordano v. Solvay Specialty Polymers USA, LLC*, No. 19-cv-21573, 2021 WL 754044, at *9 (D.N.J. Feb. 26, 2021). The PREP Act conveys exclusive jurisdiction over "cause[s] of action" based on willful misconduct. 42 U.S.C. § 247d-6d(d)(1). We are thus skeptical that allegations in support of a request for punitive damages can fall under the PREP Act's exclusive jurisdiction. Even assuming they could, our decision here rests on our conclusion that the estates' allegations in support of punitive damages do not amount to a claim of willful misconduct under the PREP Act.

The compensation fund is not a cause of action. The nursing homes argue that the compensation fund is nonetheless a *civil-enforcement provision* "exclusive of any other civil action or proceeding." 42 U.S.C. § 247d-6e(d)(4). To be sure, the Supreme Court has occasionally asked whether Congress created an exclusive civil-enforcement provision that displaces the state-law claims. *Compare Metro. Life Ins.*, 481 U.S. at 66, *with Beneficial Nat'l Bank*, 539 U.S. at 10. Arguably, the compensation fund could be a civil-enforcement provision even if it is not a cause of action. But here we need not ponder the differences between a civil-enforcement provision and a cause of action. For our purposes, it is enough that neither the Supreme Court nor any circuit court has extended complete preemption to a statute because it created a compensation fund. The three completely preemptive statutes recognized by the Supreme Court all create civil causes of action that may be pursued in any federal court. *See* 12 U.S.C. § 86; 29 U.S.C. §§ 185(a), 1132(a)(1)(B). We will not presume that Congress, in creating an administrative remedy, intended to make state-law negligence claims removable to federal court.

The Second Circuit confronted a similar case. In 2001, Congress passed the Air Transportation Safety and System Stabilization Act ("ATSSSA"), 49 U.S.C. § 40101 note. ATSSSA created a compensation fund for claims resulting from the terrorist attacks of September 11, 2011. *Id.* (ATSSSA § 405). It also created a federal cause of action for damages arising out of the attacks. *Id.* (ATSSSA § 408(b)). The Second Circuit held that the cause of action completely preempted state-law claims arising out of the attacks. *In re WTC Disaster Site*, 414 F.3d 352, 380 (2d Cir. 2005). The court found the statutory language unambiguous: "There shall exist a *Federal cause of action for damages* arising out of the hijacking and

subsequent crashes of [the September 11 flights] . . . [and] this cause of action shall be the *exclusive* remedy for damages arising out of the hijacking and subsequent crashes of such flights." 49 U.S.C. § 40101 note (ATSSSA § 408(b)(1)) (emphasis added); *see WTC Disaster Site*, 414 F.3d at 375–76. The court distinguished the cause of action from the compensation fund, in part because of the breadth of the cause of action. *See WTC Disaster Site*, 414 F.3d at 375–76.

The Second Circuit's opinion is instructive here for several reasons. First, both the PREP Act and ATSSSA explicitly create an "exclusive" federal cause of action. 42 U.S.C. § 247d-6d(d)(1); 49 U.S.C. § 40101 note (ATSSSA § 408(b)(1)). Congress's clear language in "establishing an exclusive federal remedy undeniably bespeak[s] an intent to displace state-law remedies entirely for such damages claims." *WTC Disaster Site*, 414 F.3d at 375. Second, like the Second Circuit, we see a clear difference between the preemptive effect of an exclusive cause of action and the preemptive effect of a compensation fund. *See id.* at 375–76. The key distinction between our case and the Second Circuit case is in the third point. Unlike the PREP Act, ATSSSA creates a general "remedy for damages." 49 U.S.C. § 40101 note (ATSSSA § 408(b)(1)). The PREP Act, in contrast, enumerates the elements of a specific cause action for willful misconduct. Naturally, a cause of action for "damages" will envelop far more state-law claims than will a narrow, specific cause of action for willful misconduct. Given the narrowness of the PREP Act's cause of action, it is unsurprising that we reach a different conclusion applying the PREP Act than the Second Circuit reached applying ATSSSA.

We conclude this section with a note on the limits of our holding. We do not hold that all state-law causes of action are

invulnerable to complete preemption under the PREP Act. Conceivably, some state-law claims could fall within Congress's narrow cause of action for willful misconduct. We also do not address whether the PREP Act preempts the estates' claims under ordinary preemption rules. That is for the state court to determine on remand. We hold only that (1) the estates' negligence claims based on New Jersey law do not fall under the PREP Act's narrow cause of action for willful misconduct, and (2) the PREP Act's compensation fund is not an exclusive federal cause of action triggering removal jurisdiction.

VI

Finally, the nursing homes argue that the estates' claims raise a substantial federal issue that permits removal under 28 U.S.C. § 1441(a). Like complete preemption, this argument relies on the jurisdiction of federal courts to decide federal questions. To remove a case under federal-question jurisdiction, a defendant must show that the case "aris[es] under" federal law. 28 U.S.C. § 1331; *see also id.* § 1441(a). Typically, "a case arises under federal law when federal law creates the cause of action asserted." *Gunn v. Minton*, 568 U.S. 251, 257 (2013). As we have discussed, the estates do not assert a federal cause of action. Nevertheless, a small number of state claims may arise under federal law if they raise "significant federal issues." *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).

The *Grable* test has four parts. The federal issue must be "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. If the federal issue meets

33

all four requirements, federal jurisdiction is proper. *Id.* The nursing homes argue that PREP Act immunity is a significant federal issue that passes the *Grable* test. But a PREP Act preemption defense is not "necessarily raised" by a well-pleaded state-law negligence complaint, so their argument fails at *Grable*'s first step.

"Federal preemption is ordinarily a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court." *Metro. Life Ins. Co.*, 481 U.S. at 63. Here, the nursing homes "would at best be entitled to a preemption defense" under the PREP Act. *Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 772 F.3d 158, 165 (3d Cir. 2014), *aff'd*, 578 U.S. 901 (2016). The estates would properly plead their state-law negligence claims without mentioning the PREP Act, so the PREP Act is not "an essential element of the plaintiff[s'] state law claim." *Id.* at 163. We therefore lack federal-question jurisdiction under *Grable*.

\* \* \*

Federal courts have limited jurisdiction. We may decide only cases or controversies that the Constitution and Congress say we may decide. Here, the estates of the deceased filed wrongful-death lawsuits against the nursing homes. They filed in state court and asserted only garden-variety state-law claims, so state court is where these cases belong. We will affirm the order of the District Court.