**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1435
_____

ESTATE OF CLARA T. TROILO,
Deceased, by Frank Troilo, Executor of the Estate of Clara T. Troilo

v.

ROSE TREE PLACE; NSL ROSE TREE PLACE, LLC, doing business as
Rose Tree Place; WATERMARK RETIREMENT COMMUNITIES INC;
WATERMARK RETIREMENT COMMUNITIES LLC; WATERMARK
OPERATOR LLC; CYNTHIA EVANS; KAREN MILAWSKY,
Appellants
_____

On Appeal from the United States District Court
For the Eastern District of Pennsylvania
(D.C. No. 2-22-cv-00097)
District Judge: Honorable Mitchell S. Goldberg
_____

Submitted Under Third Circuit L.A.R. 34.1(a) on
December 6, 2023

Before: SHWARTZ, CHUNG, and McKEE, *Circuit Judges*

(Opinion filed: January 9, 2024)

_____

OPINION*
_____


**McKEE**, *Circuit Judge*

This case concerns Plaintiff's claims that Defendants made misleading statements about the prevalence of COVID-19 infections within their senior living community. Defendants removed this case from state court, but the District Court remanded the case for lack of subject matter jurisdiction. Defendants appeal the District Court's remand order, arguing that this case comes within federal jurisdiction either because Plaintiff's state law claims should be construed as federal claims or because Defendants were acting under the direction of federal officers by virtue of their role in the COVID-19 pandemic.

We agree with the District Court that we lack subject matter jurisdiction over this case, so we will affirm.[1]

**I.**

Defendants argue that this case should remain in federal court for essentially two reasons. First, Defendants argue that at least one of Plaintiff's claims is equivalent to a

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] Because Defendants asserted the federal officer removal statute as a basis for removal, we have jurisdiction to review any basis for removal addressed in the District Court's order. *See Maglioli v. Alliance HC Holdings LLC*, 16 F.4th 393, 403 (3d Cir. 2021) (first citing 28 U.S.C. § 1447(d); then citing *BP P.L.C. v. Mayor of Balt.*, 593 U.S. 230 (2021)). We review orders remanding for lack of subject matter jurisdiction de novo. *Id.*

willful misconduct claim[2] under the Public Readiness and Emergency Preparedness Act[3] (the "PREP Act"). Defendants argue that such a claim falls within federal jurisdiction either because the PREP Act explicitly provides for exclusive federal jurisdiction over willful misconduct claims or because the PREP Act implicitly provides for federal jurisdiction over such claims via complete preemption. Second, Defendants argue that federal jurisdiction is appropriate under the federal officer removal statute because Defendants participated in the federal government's response to the COVID-19 pandemic. Neither argument is persuasive.

Regardless of whether we characterize Defendant's first argument as an artful pleading argument or a complete preemption argument, the argument succeeds only if Plaintiff's state law claim falls within the PREP Act's cause of action for willful misconduct.[4] Plaintiff's claim is that Defendants misrepresented the prevalence of COVID-19 at their senior living community to residents' family members and thereby caused Clara Troilo's death. But a complaint does not state a claim under the PREP Act merely because its allegations involve willful misconduct related to COVID-19. Instead, the complaint must allege willful misconduct related to "*the*" COVID-19 countermeasure

---

[2] 42 U.S.C. § 247d-6d(d)(1).
[3] 42 U.S.C. §§ 247d-6d, 247d-6e.
[4] *See* 42 U.S.C. § 247d-6d(e)(1) (providing exclusive federal jurisdiction over only claims of willful misconduct); *Maglioli*, 16 F.4th at 407 (concluding that state law claims are completely preempted by the PREP Act only if they fall within the PREP Act's cause of action for willful misconduct); *see also* 14C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3722.1 (Rev. 4th ed., April 2023 Update) (describing complete preemption as a theory of artful pleading).

that was "administered *to* or used *by* the person on whose behalf the complaint was filed."[5]

Here, Plaintiff does not allege that Defendants ever administered a countermeasure *to* Troilo, the decedent for whom Plaintiff sues. At most, Plaintiff alleges that Defendants administered countermeasures in the form of COVID-19 tests to *others* and then misrepresented the results of those tests to Troilo's family. Because Troilo did not herself receive a countermeasure, it is clear under the PREP Act's plain text that her estate cannot state a claim for willful misconduct.

Defendants' second argument is equally unavailing because it is foreclosed by our precedent. In *Maglioli v. Alliance HC Holdings LLC*, we determined that nursing homes did not become federal agents during the COVID-19 pandemic.[6] Defendants do not attempt to distinguish their senior living community from the nursing homes considered in *Maglioli*.[7] Instead, Defendants argue that we should reconsider our holding in *Maglioli* because there are additional reasons to believe nursing homes and senior living communities operated as federal agents during the pandemic that were not addressed in *Maglioli*. Defendants' additional arguments are wholly unpersuasive.[8] But even if they

---

[5] 42 U.S.C. § 247d-6d(e)(3)(A) (emphasis added).

[6] *Maglioli*, 16 F.4th at 404–06.

[7] Indeed, Defendants seem to concede that their senior living community is covered by *Maglioli*'s holding. Appellant Br. 42 ("The law of this Circuit is that *senior living communities like Rose Tree* were not being controlled by the federal government . . . .") (emphasis added).

[8] Defendants argue that *Maglioli* failed to consider that the Department of Health and Human Services ("DHHS") declared senior living communities "covered persons" and "program planners" under the PREP Act, Appellant Br. 33; that Defendants were part of

4

an "essential national network of . . . program planners providing COVID-19 countermeasure[s]," *id.* at 34; and that DHHS referred to "healthcare companies" as "part of a government response to the COVID-19 pandemic," *id.* at 35 (internal quotation marks and citation omitted). But a wide variety of private actors performed important public health functions during the pandemic, and most of those private actors would not be considered federal agents. *See, e.g.*, *Maglioli*, 16 F.4th at 406 ("[N]ursing homes [were designated] essential critical infrastructure. But that is also true of doctors, weather forecasters, clergy, farmers, bus drivers, plumbers, dry cleaners, and many other workers. Congress did not deputize all of these private-sector workers as federal officers.") (footnotes omitted).

Defendants also argue that the Pennsylvania Department of Health ("PDH") is a federal contractor for purposes of implementing Medicare and Medicaid programs, that Defendants were licensed by PDH to provide congregate senior living services, and that Defendants cooperated with PDH and DHHS during the COVID-19 pandemic. It is difficult to follow Defendants' logic, but they seem to argue that the combination of these facts necessarily transforms Rose Tree into a federal agent. But if Defendants' regulatory relationship with the federal government itself does not transform Defendants into federal agents, *id.* at 405, then surely Defendants' regulatory relationship with a state agency that is a federal contractor for purposes unrelated to the COVID-19 pandemic does not transform Defendants into federal agents.

Finally, Defendants argue that Congress must have intended for nursing homes to be able to avail themselves of the federal officer removal statute because the PREP Act does not "abrogate or limit any defense or protection available to the United States or its agencies, instrumentalities, officers, or employees under any other law." 42 U.S.C. § 247d-6d(f). But that Congress preserved defenses and protections for the federal government's "instrumentalities" says nothing about whether Defendants *were* the federal government's instrumentalities.

More generally, as we observed in *Maglioli*, the fundamental flaw in Defendants' argument is that Defendants neither fulfilled a duty of the federal government nor had a sufficiently close relationship with the federal government. *Maglioli*, 16 F.4th. at 405–06. None of Defendants' additional arguments cure these flaws. While one may hope that the federal government would act to address a public health crisis, the federal government is not legally compelled to do so. And while nursing homes may have played an important role in the federal government's response to the pandemic, Defendants have not identified any evidence that nursing homes were subject to greater "monitoring" or "supervision," *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 153 (2007), than we observed in *Maglioli*, *see* 16 F.4th at 405.

5

were persuasive, we, as a panel of this Court, would remain bound by our decision in *Maglioli*.[9]

## II.

For these reasons, we will affirm the District Court's remand order.

---

[9] Third Circuit Court of Appeals I.O.P. 9.1 ("It is the tradition of this court that the holding of a panel in a precedential opinion is binding on subsequent panels.").