## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| TYRRAN SMITH and | ) | |
| TATRA BRADSHAW individually | ) | |
| and as administrators of the | ) | |
| ESTATE OF DENISE BRADSHAW, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. N21C-08-245 JRJ |
| | ) | |
| NELI SERAFIMOVA, M.D., | ) | |
| WESLEY EMMONS, M.D., JOHN | ) | |
| D'AMBROSIO, D.O., MICHAEL | ) | |
| VAN WINKLE, D.O., and | ) | |
| ST. FRANCIS HOSPITAL, INC., | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |

Date Submitted: April 4, 2023
Date Decided: May 18, 2023

## MEMORANDUM OPINION

*Upon Consideration of Defendants Neli Serafimova, M.D., Michael Van Winkle, D.O, Wesley Emmons, M.D., John D'Ambrosio, D.O., and St. Francis Hospital, Inc.'s Motions to Dismiss:* **DENIED.**

Leroy A. Tice, Esq., and Charles H. Toliver, IV, Esq., Team Tice, 1203 N. Orange Street, Suite 2, Wilmington, DE 19801. Attorneys for Plaintiffs.

Maria R. Granaudo Gesty, Esq., Burns White LLC, Delaware Corporate Center I, 1 Righter Parkway, Suite 130, Wilmington, DE 19803. Attorney for Defendants Neli Serafimova, M.D. and Michael Van Winkle, D.O.

Jonathan D. Landua, Esq., and Gregory S. McKee, Esq., Wharton, Levin, Ehrmantraut & Klein, P.A., 300 Delaware Avenue, Suite 1110, Wilmington, DE 19801.  Attorneys for Defendant Wesley Emmons, M.D.

John A. Elzufon, Esq., and Matthew P. Donelson, Esq., Elzufon, Austin & Mondell, P.A., 300 Delaware Avenue, Suite 1700, Wilmington, DE 19801.  Attorneys for Defendant John D'Ambrosio, D.O.

Colleen D. Shields, Esq., and Alexandra D. Rogin, Esq., Eckert, Seamans, Cherin & Mellott, LLC, 222 Delaware Avenue, 7th Floor, Wilmington, DE 19801.  Attorneys for Defendant St. Francis Hospital, Inc.

**Jurden, P.J.**

2

# I.    INTRODUCTION

This is an action for medical malpractice brought on behalf of an individual who died after suffering a large intra-abdominal hematoma while hospitalized with COVID-19.  Plaintiffs Tyrran Smith and Tatra Bradshaw ("Plaintiffs"), individually as son and daughter of Denise Bradshaw ("Ms. Bradshaw") and as executors of her estate, claim Defendants Neli Serafimova, M.D. ("Dr. Serafimova"), Michael Van Winkle, D.O. ("Dr. Van Winkle"), Wesley Emmons, M.D. ("Dr. Emmons"), John D'Ambrosio, D.O. ("Dr. D'Ambrosio"), and St. Francis Hospital, Inc. ("St. Francis")[1] proximately caused the death of Ms. Bradshaw.  Defendants ask the Court to dismiss Plaintiffs' Complaint, arguing they are entitled to immunity under the Public Readiness and Emergency Preparedness Act ("PREP Act").  For the reasons that follow, Defendants' Motions to Dismiss are **DENIED**.

# II.    BACKGROUND

## A.    Allegations

Ms. Bradshaw received treatment at St. Francis from March 26, 2020, until 5:27 a.m. on April 9, 2020, when she suffered a cardiac incident and was pronounced

---

[1] This Memorandum Opinion refers to Drs. Serafimova, Van Winkle, Emmons, and D'Ambrosio collectively as "Defendant Doctors."  Any reference to "Defendants" refers to Defendant Doctors and St. Francis.

dead.[2]  During that time, numerous medical professionals, including the Defendant Doctors, treated her.[3]

On March 26, 2020, Ms. Bradshaw was admitted to the emergency department at St. Francis in Wilmington, Delaware after displaying symptoms of COVID-19.[4]  She was subsequently diagnosed with COVID-19, pneumonia, and sepsis.[5]  On intake, a physician, not a party to this case, documented Ms. Bradshaw's medical history, specifically noting that she "was taking an anticoagulant for deep vein thrombosis" ("DVT").[6]

Dr. Emmons, an infectious disease specialist, first saw Ms. Bradshaw on March 27, 2020.[7]  Dr. Emmons evaluated her condition and confirmed the prior diagnoses of COVID-19, sepsis, and pneumonia.[8]

Dr. Serafimova later saw Ms. Bradshaw between March 31 and April 2, 2020.[9] Dr. Serafimova's notes suggest that Ms. Bradshaw's condition was improving: her breathing increased, she experienced less wheezing and coughing, she was eating

---

[2] Compl. ¶ 30, Trans. ID 66885385.
[3] *See generally id.*
[4] *Id.* ¶ 11.
[5] *Id.* ¶¶ 11-12.
[6] *Id.* ¶ 12.
[7] *Id.* ¶ 13.
[8] Compl. ¶ 13.
[9] *Id.* ¶¶ 17 16.

more, and her sepsis was improving.[10]   However, Ms. Bradshaw consistently reported experiencing abdominal pain when coughing.[11]

On April 3, 2020, Dr. Emmons documented Ms. Bradshaw's continued improvement, noting that "she was eating better, had less dry cough, was in less distress, and conversant."[12]   Dr. Emmons also reported a positive increase in her oxygen levels.[13]   Dr. Serafimova again treated Ms. Bradshaw between April 4 and April 6, 2020, further documenting her progress.[14]   Although Ms. Bradshaw reported experiencing abdominal pain while coughing, Dr. Serafimova determined that her progress was such that she could begin weaning off supplemental oxygen.[15]

Dr. Emmons met with Ms. Bradshaw and her family on April 7, 2020.[16]   He discussed her overall progress and predicted, given her continued improvement, that "he expected to release Ms. Bradshaw by Thursday, April 9, 2020."[17]   He also explained that the terms of her release would include a fourteen-day quarantine at home.[18]

---

[10] *Id.*
[11] *Id.*
[12] *Id.* ¶ 18.
[13] *Id.*
[14] Compl. ¶¶ 19-20.
[15] *Id.* ¶ 20.
[16] *Id.* ¶ 21.
[17] *Id.*
[18] *Id.*

On April 8, 2020, at about 9:13 a.m. Ms. Bradshaw was seen by a nurse who "documented a rapid worsening of Ms. Bradshaw's condition."[19] Specifically, he observed a drop in her oxygen levels, a drop in her hemoglobin levels, and an increase in her white blood cell count. In addition, the nurse reported that Ms. Bradshaw "felt cold, became weak and could not support her own body weight."[20] He called Dr. Emmons, who requested that she be transferred to the ICU and ordered a CT scan of her abdomen.[21] Later that morning, Dr. Emmons evaluated Ms. Bradshaw, noting abdominal distension and pain, as well as an elevated D-dimer level.[22] Dr. Emmons attributed those results to an abdominal bleed and ordered that the Lovenox be stopped and again requested that she be transferred to the ICU.[23]

At 10:36 a.m. on April 8, 2020, Dr. D'Ambrosio was made aware of Ms. Bradshaw's CT scan results.[24] The scan showed "a large hematoma involving the left anterior abdominal/pelvic wall musculature as well as extraperitoneal space measuring 10.7 x 19.4 x over 36 cm".[25]

---

[19] *Id.* ¶ 23.
[20] Compl. ¶ 23.
[21] *Id.*
[22] *Id.*¶ 24. D-dimer is "a protein fragment that your body makes when a blood clot dissolves in your body . . . A positive or elevated D-dimer test result may indicate that you have a blood clotting condition." *D-Dimer Test: What is a D-Dimer Test?* Cleveland Clinic, https://my.clevelandclinic.org/health/diagnostics/22045-d-dimer-test (last updated Nov. 9, 2021).
[23] Compl. ¶ 24.
[24] *Id.* ¶ 26.
[25] *Id.*

At about 11:18 a.m., Dr. Serafimova documented a steep decline in Ms. Bradshaw's condition, noting a sharp increase in abdominal pain and shortness of breath.[26] Ms. Bradshaw also exhibited physical signs of distress.[27] That, coupled with her lab results, caused Dr. Serafimova to document her own concerns as to the existence of an abdominal bleed.[28] As a result, Dr. Serafimova ordered that Lovenox be stopped, ordered a blood transfusion, and sought the results of Ms. Bradshaw's CT scans.[29]

Soon after, at 11:49 a.m., Dr. D'Ambrosio evaluated Ms. Bradshaw, diagnosing her with acute blood loss anemia due to the "rectus sheath hematoma."[30] Dr. D'Ambrosio, also ordered that Lovenox be stopped and that she be transferred to the ICU.[31] It is unknown when Ms. Bradshaw was transferred to the ICU.[32] Ms. Bradshaw was intubated at 8:54 PM.[33]

Dr. Van Winkle first became involved in Ms. Bradshaw's care on the evening of April 8, 2020.[34] He noted a continued decline in her condition and confirmed that her CT scan showed a large hematoma in her abdomen.[35] Dr. Van Winkle consulted

---

[26] *Id.* ¶ 25.
[27] *Id.*
[28] *Id.*
[29] Compl. ¶ 25.
[30] *Id.* ¶ 27.
[31] *Id.* Ms. Bradshaw's last dose of Lovenox was reportedly administered eleven hours prior.
[32] *Id.*
[33] *Id.* ¶ 28.
[34] *Id.* ¶ 29.
[35] Compl. ¶ 29.

with an interventional radiologist[36] and expressed concern that Ms. Bradshaw was suffering from an abdominal bleed.[37]  The radiologist suggested that Dr. Van Winkle hold off on any interventional procedures because "abdominal wall hematomas usually . . . stop [bleeding] without intervention."[38]  However, Ms. Bradshaw's condition continued to decline, leading Dr. Van Winkle to believe she was likely undergoing an active bleed.[39]  At that time, Ms. Bradshaw's care team took her to the Interventional Radiology unit for an exploratory procedure, but she passed away in the early morning of April 9, 2020, before they could begin.[40]

In June 2020, Plaintiffs allege that Dr. Emmons spoke with them and admitted that Ms. Bradshaw's care team, himself included, "committed significant error in delaying [her] transfer to the ICU . . . [and] . . . but for that mistake, [she] would still be alive."[41]

## B.    Procedural History

On August 27, 2021, Plaintiffs filed their Complaint alleging medical negligence against the Defendant Doctors in their individual capacities and St.

---

[36] Plaintiffs do not make any allegation as to the identity of the Interventional Radiologist.
[37] Compl. ¶ 30.
[38] *Id.*  (internal citations omitted).
[39] *Id.*
[40] *Id.*
[41] *Id.* ¶ 33.

Francis under the theory of vicarious liability (Counts I–IV and Count V, respectively).[42]

Plaintiffs allege that the Defendant Doctors were medically negligent because they:

a. Failed in a timely manner to order an appropriate diagnostic study of Ms. Bradshaw's abdomen;

b. Failed in a timely manner to discontinue the use of significant doses of anticoagulants;

c. Failed to timely transfer Ms. Bradshaw to the ICU so that appropriate individualized care could be rendered; and/or

d. Discovered via CT scan that Ms. Bradshaw had a large intra-abdominal hematoma involving the left anterior abdominal/pelvic wall musculature as well as extraperitoneal space measuring 10.7 x 19.4 x over 36 cm, yet [] failed to order an immediate exploratory procedure or immediate embolization of the acute intra-abdominal bleed, and/or take any other steps to address the condition.[43]

In Count V, Plaintiffs allege that St. Francis is vicariously liable for the acts of its agents, the Defendant Doctors,[44] and as a result of Defendants' negligence, Ms. Bradshaw "suffered conscious physical injury, pain, [] emotional suffering" and death.[45]

_____

[42] *Id.* ¶¶ 34-71. Plaintiffs' Complaint refers to this Count as "Count VI;" however, the Complaint does not allege a Count V. Thus, the Court will refer to the claims against St. Francis as Count V.
[43] Compl. ¶¶ 39, 46, 53, 60.
[44] *Id.* ¶¶ 63-70.
[45] *Id.* ¶¶ 40, 47, 54, 61, 71.

9

In October 2021, Defendants each filed a Notice of Removal to the United States District Court for the District of Delaware ("District Court").[46]  There, Dr. Serafimova filed a Motion to Dismiss Plaintiffs' Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1).[47]  On August 19, 2022, the District Court issued an Order to Show Cause why the case should not be remanded, given the Third Circuit's decision in *Est. of Maglioli v. Andover Subacute Rehab. Ctr. I*.[48]  Defendants subsequently filed a joint stipulation to remand the matter back to the Superior Court, which the District Court signed on September 19, 2022.[49]

Upon remand to the Superior Court, the Court held a teleconference with the parties.  Because the Defendants' motions to dismiss were initially filed in District Court and grounded in federal law, the Court ordered the parties to file supplemental briefing or new motions.[50]  Dr. Serafimova and Dr. Van Winkle filed a supplemental brief on January 12, 2023.[51]  They seek dismissal on the grounds that the immunity

---

[46] Notice of Removal, Trans ID 67015492, 67018401, 67019322, 67106701.  Dr. Van Winkle filed to join Dr. Serafimova's Notice of Removal on November 1, 2021, Trans. ID 67059932.

[47] *See generally*, Serafimova and Van Winkle Suppl. Br., Ex. A, Trans. ID 68885338.  Dr. Van Winkle, Dr. Emmons, Dr. D'Ambrosio, and St. Francis subsequently filed motions for joinder, adopting Dr. Serafimova's Motion as their own.

[48] 478 F. Supp. 3d 518, 522 (D.N.J. 2020), *aff'd sub nom. Maglioli v. All. HC Holdings LLC*, 16 F.4th 393 (3d Cir. 2021) (holding that a defendant alleging negligence in state court concerning COVID-19 could not remove the action to federal court).  Stipulation and Proposed Order to Remand, Trans. ID 69267916.

[49] Letter to the Superior Court Prothonotary from District Court Clerk Trans. ID 69267916.

[50] Judicial Action Form, Trans. ID 68236801.

[51] *See generally* Serafimova and Van Winkle Suppl. Br., Trans. ID 68885338.  With their brief, Dr. Serafimova and Dr. Van Winkle filed six exhibits, totaling over 200 pages.  Each exhibit contains numerous documents, including briefing from their motions as filed in District Court medical documentation, and a compendium of case law and advisory opinions.  Along with their

provision of the PREP Act requires this Court to dismiss the cause of action against them.[52] Dr. Emmons, Dr. D'Ambrosio, and St. Francis each filed motions adopting Dr. Serafimova and Dr. Van Winkle's arguments and raising their own grounds for dismissal.[53]

## III. STANDARD OF REVIEW

On a motion to dismiss pursuant to Superior Court Rule 12(b)(6), the Court may dismiss an action for failure to state a claim upon which relief can be granted.[54] The Court will accept all well-pled allegations as true and draw every reasonable factual inference in favor of the nonmoving party.[55] The Court will dismiss a complaint only if it appears "with reasonable certainty that, under any set of facts that could be proven to support the claims asserted, the plaintiff would not be entitled

---

own motions to dismiss, Dr. Emmons and Dr. D'Ambrosio filed several exhibits, including an affidavit attesting to why Ms. Bradshaw had been administered Lovenox. The Court declines to consider Defendants' exhibits at this stage of the litigation. Status Conf. Tr. 18:20-23, Trans. ID 69630561.

[52] *Id.* The title of Dr. Serafimova and Dr. Van Winkle's Supplemental Brief references both Superior Court Civil Rule 12(b)(1) and 12(b)(6); however, they failed to make an argument pursuant to Rule 12(b)(1).

[53] Emmons Joinder, Trans. ID 68891505; D'Ambrosio Joinder, Trans. ID 68896248; St. Francis Joinder, Trans. ID 68907224. In addition to Dr. Serafimova and Dr. Van Winkle's bases for relief, each remaining Defendant filed a motion expounding on why Plaintiff's claims should be dismissed. Dr. Emmons and Dr. D'Ambrosio each argue why they are "covered persons" under the PREP Act. *See generally* Emmons Joinder; D'Ambrosio Joinder. St. Francis argues that because Plaintiffs' claims are based on a theory of vicarious liability, to the extent the claims against the Defendant Doctors are dismissed, the claims against it should also be dismissed. *See generally* St. Francis Joinder.

[54] Super. Ct. Civ. R. 12(b)(6).

[55] *Id.*

to relief."[56]  In considering a Rule 12(b)(6) motion, "[t]he complaint generally defines the universe of facts that the trial court may consider . . . ."[57]  The Court may consider matters outside the complaint only if "the document is integral to a plaintiff's claim and incorporated into the complaint[.]"[58]  If "matters outside the pleading are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56."[59]

## IV. DISCUSSION

Under the PREP Act:

> [A] covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure if a declaration under subsection (b) has been issued with respect to such countermeasure.[60]

Thus, immunity is available where (i) a covered person; (ii) uses or administers a covered countermeasure; (iii) in the course of a recommended activity; and (iv) the plaintiff's claims have a causal relationship with the administration or use thereof.[61]

---

[56] *Clinton v. Enter. Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009).
[57] *Hansen v. Brandywine Nursing & Rehab. Ctr., Inc.*, 2023 WL 587950 (Del. Super. Jan. 23, 2023) citing *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006).
[58] *Windsor I, LLC v. CWCap. Asset Mgmt. LLC*, 238 A.3d 863, 873 (Del. 2020) (internal quotation marks omitted).  The Court may also consider extrinsic documents not relied on for the truth of their contents and espousing facts ripe for judicial notice.  *Smartmatic USA Corp. v. Newsmax Media, Inc.*, 2023 WL 1525024, at *9-10 (Del. Super. Feb. 3, 2023).
[59] Super. Ct. Civ. R. 12(b).
[60] 42 U.S.C.A. § 247d-6d.
[61] *Id.*; s*ee also* Serafimova and Van Winkle Suppl. Br. at 6.

Defendants argue that Ms. Bradshaw was prescribed Lovenox[62] to treat COVID-19, and because Plaintiffs' claims suggest misfeasance in failing to discontinue the use of Lovenox, the PREP Act applies.[63]

Plaintiffs counter that their claims fall outside the scope of the PREP Act because the "negligence alleged is based upon the failure to diagnose and treat the abdominal bleed, and is not alleged to have been caused by, have resulted from or was related to the use of a covered countermeasure."[64] Plaintiffs further argue that Lovenox was not administered as a treatment for COVID-19; instead, they argue that Ms. Bradshaw had been receiving anticoagulants prior to her admission to St. Francis and was subsequently prescribed Lovenox at St. Francis to treat her DVT.[65]

The well-pled allegations in the Complaint support Plaintiffs' arguments in this regard. On admission to St. Francis, Ms. Bradshaw "was taking an anticoagulant for deep vein thrombosis."[66] Then, at approximately 10:47 a.m. on April 8, 2020, Dr. Emmons noted that "Ms. Bradshaw was on a full dose of Lovenox (anticoagulant), which was stopped."[67] At 11:18 a.m., Dr. Serafimova "ordered 1 unit of whole blood to be transfused and . . . that [] Lovenox be stopped."[68] And at

---

[62] Defendants argue that Lovenox is a "covered countermeasure" under the PREP Act. *See generally* Serafimova and Van Winkle Suppl. Br.
[63] *Id.* at 14.
[64] Pls.' Resp. at 11
[65] *Id.* at 9.
[66] Compl. ¶ 12.
[67] *Id.* ¶ 24.
[68] *Id.* ¶¶ 24-25, 27.

11:49 a.m., Dr. D'Ambrosio "called for the Lovenox to be stopped, the last dose having been administered 11 hours prior to that time."[69] Although Plaintiffs allege that the Defendant Doctors were negligent in their failure to timely "discontinue the use of significant doses of anticoagulants,"[70] nowhere do they allege that Defendants negligently prescribed, administered, or used Lovenox to treat Ms. Bradshaw. Nor do they allege that the use of Lovenox, or any other anticoagulant treatment, was the proximate cause of, and/or was responsible for, the abdominal bleed she suffered. Rather, Plaintiffs plead that "the failure to diagnose, discover and treat in a timely fashion the abdominal bleed that ultimately led to [Ms. Bradshaw's] death,"[71] which includes the failure to discontinue "any medications that might exacerbate that bleed."[72]

Based on the well-pled allegations, there is nothing to link the use of Lovenox to Ms. Bradshaw's COVID-19 diagnosis or treatment, a condition caused by COVID-19, or the like, and therefore, at this juncture, the causal connection required to assert immunity under the PREP Act does not exist.[73]

---

[69] *Id.* ¶ 27.
[70] *Id.* ¶ 40, 47, 54, 61, 71.
[71] Pls.' Resp. at 8.
[72] *Id.*
[73] Defendants also maintain that they are entitled to immunity under the PREP Act simply because Ms. Bradshaw was being treated for COVID-19. Given the ruling above and the procedural posture, the Court need not address this argument.

## V. CONCLUSION

For the aforementioned reasons, Defendants' Motions to Dismiss are **DENIED.**

**IT IS SO ORDERED.**

/s/ Jan R. Jurden

Jan R. Jurden, President Judge

cc: Prothonotary