## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

ANITA WEST, individually and )
as personal representative )
of the estate of MATTIE )
FLAMER, deceased, )
  )
  )
Plaintiff, )
  )
v. )        C.A. No. N22C-06-067 JRJ
  )
BRANDYWINE NURSING AND )
REHABILITATION CENTER, INC., )
and BRANDYWINE )
CONVALESCENT HOME INC., )
  )
Defendants. )

Date Submitted:     July 31, 2023
Date Decided:       October 30, 2023

## MEMORANDUM OPINION

*Upon Defendant's Motion to Dismiss:*
**DENIED**

Gary S. Nitsche, Esq., and James Gaspero, Jr., Esq., Nitsche & Fredericks, LLC, 305 North Union Street, Second Floor, P.O. Box 2324, Wilmington, DE 19899. Attorneys for Plaintiff.

Joseph J. Bellew, Esq., Michael C. Heyden, Jr., Esq., and Joseph E. Brenner, Esq., Gordon Rees Scully Mansukhani, LLP, 824 N. Market Street, Suite 220, Wilmington, DE 19801. Sandra Mekita Cianflone, Esq., Hall Booth Smith, P.C. (*pro hac vice*). Attorneys for Defendant.

**JURDEN, P.J.**

# I. INTRODUCTION

This action stems from the death of nursing home resident, Mattie Flamer, due to COVID-19. Ms. Flamer's daughter, Anita West, individually and as personal representative of her mother's estate, alleges five counts – negligence, wrongful death, survival, gross negligence, and willful and wanton misconduct – against Brandywine Nursing and Rehabilitation Center, Inc. ("BNR") and Brandywine Convalescent Home ("BCH").[1] Before the Court is BNR's Motion to Dismiss the Complaint pursuant to Rule 12(b)(1) and 12(b)(6). BNR claims the Complaint is time-barred by the statute of limitations, and it is entitled to immunity under the Public Readiness and Emergency Preparedness Act ("PREP Act"). For the reasons that follow, BNR's Motion to Dismiss is **DENIED.**

# II. BACKGROUND[2]

On June 14, 2018, Ms. Flamer was admitted to BNR.[3] BNR is a skilled nursing care facility that accepts Medicaid/Medicare as payment and is heavily

---

[1] On May 10, 2023, the Court granted a Stipulation of Partial Dismissal, leaving BNR and BCH as the two remaining defendants in this action. Stip. Partial Dismissal, Trans. ID 69986065 (May 10, 2023). BCH is the registered agent on file for BNR. *See* Pl.'s Ans. Br. at Ex. A, Trans. ID 69082269 (Feb. 6, 2023). Plaintiff filed a Motion for Default Judgment against BCH that was scheduled to be heard on August 9, 2023, but withdrew the Motion on August 8, 2023. Mot. for Default J., Trans. ID 70588982 (Aug. 8, 2023).

[2] On a Motion to Dismiss, the Court views the complaint in the light most favorable to the non-moving party, accepts as true all well-pled allegations and draws all reasonable inferences that logically flow from those allegations. *Clinton v. Enter. Rent-A-Car*, 977 A.2d 892, 895 (Del. 2009).

[3] Compl. ¶ 11, Trans. ID 67708216 (June 9, 2022).

regulated at both the state and federal level.[4]  On May 15, 2020, BNR conducted universal COVID-19 testing of its residents, and three days later Ms. Flamer's test returned positive.[5]  On May 30, 2020, Ms. Flamer was transferred to the hospital after being found unresponsive and hypoxic.[6]  She was subsequently discharged and returned to BNR on June 5, 2020.[7]  On June 18, 2020, Ms. Flamer passed away.[8]  Her death certificate lists COVID-19 as the cause of death.[9]

On December 23, 2021, Plaintiff sent via certified mail, return receipt requested, a Notice of Intent letter ("Notice") to "Springs Rehabilitation at Brandywine, LLC"[10] and "Brandywine Nursing and Rehabilitation" at 505 Greenbank Road, Wilmington, DE 19808.[11]  The subject line of the Notice states, "RE: Our Client: Mattie Flamer (deceased) NOTICE OF INTENT."  The Notice reads:

> This Notice is sent to you pursuant to Title 18 [*Del. C.*] § 6856(4).  This is a Notice of Intent to investigate a potential claim against Brandywine Nursing and Rehabilitation and Sprin[g]s Rehabilitation at Brandywine, LLC regarding care given to Mattie Flamer.

---

[4] *Id.* ¶ 19.
[5] *Id.* ¶ 12-13.
[6] *Id.* ¶ 14.
[7] *Id.* ¶ 15.
[8] *Id.* ¶ 17.
[9] *Id.*
[10] Pl.'s Ans. Br. at 8.  Springs Rehabilitation at Brandywine, LLC was listed as a potential defendant at the time the Notice was sent.  *Id.*
[11] *Id.* at Ex. B.  At the time the Notice was sent, the Delaware Division of Corporations listed BNR as the entity at 505 Greenbank Road, Wilmington, DE 19808.  *Id.* at Ex. A.  However, unbeknownst to Plaintiff and her Counsel, the facility at issue was sold on May 31, 2021, terminating BNR's operation and ownership of it.  Def.'s Op. Br., 15 n.21, Trans. ID 68413082 (Nov. 21, 2022).

Brandywine Nursing and Rehabilitation and Springs Rehabilitation at Brandywine, LLC were the treating health care providers of Ms. Flamer when she sustained a positive COVID diagnosis in June 2020. Ms. Flamer died on 6/18/20 with cause of death listed as late effects of COVID-19. The above referenced statute allows us to send you this letter without necessitating the filing of a lawsuit. Additionally, this Notice will not be filed with any Court unless it is determined that a Complaint must be filed. Pursuant to the above referenced statute my client has ninety (90) days from the date of the applicable statute of limitations to investigate and either file a lawsuit or not.

Neither the family of Ms. Flamer nor I want to file any case against any health care provider unless we have sound evidence to support that claim. Brandywine Nursing and Rehabilitation and Springs Rehabilitation at Brandywine, LLC are potential defendants in this matter. Further, upon completion of our investigation, we hope this matter can be amicably resolved without the need to resort to litigation. We will be diligent in our investigation of the loss and file the case only if we believe that negligence has occurred and/or a breach in the applicable standard of care and a Board-Certified expert in the field is willing to so testify.

This Notice is sent via Certified U.S. Mail, Return Receipt Requested. If you have any questions about this, please do not hesitate to contact me.[12]

On May 19, 2022, Plaintiff sent similar Notice of Intent letters to the following entities by certified mail, return receipt requested: "SRAB Holdings, LLC"; "Springs Rehabilitation at Brandywine, LLC"; "DE Noble Parentco, LLC"; "Coral Springs,

---

[12] Pl.'s Ans. Br. at Ex. B.

4

LLC"; "Brandywine Nursing and Rehabilitation"; "Brandywine Convalescent Home, Inc."; and "Coral Springs Rehab and Healthcare Center."[13]

Plaintiff filed suit on June 9, 2022.[14] Plaintiff alleges that BNR failed to follow various protocols and guidelines to prevent and control the spread of COVID-19, including policies regarding isolation of presumptively positive residents, segregation of new admittees, screening, disinfection, lack of PPE use, staffing, and reporting.[15] Plaintiff also alleges that BNR failed to hire competent staff and failed to train and direct its employees in accordance with the applicable protocols and guidelines.[16]

### III. STANDARD OF REVIEW[17]

#### A. Rule 12(b)(6)

On a motion to dismiss pursuant to Superior Court Rule 12(b)(6), the Court may dismiss an action for "failure to state a claim upon which relief can be

---

[13] Compl. at Ex. B. BNR notes the May 19, 2022, Notice of Intent letters differ from the December Notice. Def.'s Op. Br. at 15 n.20. The May letters are immaterial as the Court finds the December Notice timely and valid under the statute.

[14] Compl. at 1-13.

[15] *Id.* at 5-13. As noted earlier, Plaintiff asserts that these failures amounted to gross negligence and willful and wanton misconduct warranting punitive damages. *Id.* at 9.

[16] *Id.* at 7, 12.

[17] Finding the PREP Act to be inapplicable, the Court will not engage in a Rule 12(b)(1) analysis. *See, e.g., Beaty v. Delaware County*, 2023 WL 5423020, at *2 (E.D. Pa. Aug. 10, 2023) (holding "[b]ecause the PREP Act does not apply here . . . [the] preemption arguments necessarily fail."); *Estate of Troilo by Troilo v. Rose Tree Place*, 2023 WL 5277926, at *4 (E.D. Pa. Aug. 16, 2023) (". . . willful misconduct claim must be one for loss relating to the administration of a covered countermeasure before the D.D.C.'s exclusive jurisdiction is triggered . . .").

granted[.]"[18]  When considering a Rule 12 (b)(6) motion, the Court accepts as true all well-pled allegations, and draws every reasonable factual inference in favor of the nonmoving party.[19]  The Court will dismiss a complaint only if it appears "with reasonable certainty that, under any set of facts that could be proven to support the claims asserted, the plaintiff would not be entitled to relief."[20]

## IV.  DISCUSSION

### A.  Statute of Limitations and Tolling

Pursuant to 18 *Del. C.* § 6856(1), the statute of limitations for medical negligence and resulting wrongful death actions is two years from the date of injury.[21]  Under 18 *Del. C.* § 6856(4) a plaintiff may toll the statute for up to ninety days from the last day of the applicable statute of limitations.[22]  In order to do this, a plaintiff must send a "Notice of Intent to investigate to each potential defendant or defendants by certified mail, return receipt requested, at the defendant's or defendants' regular place of business."[23]  The Notice of Intent must contain the name of the potential defendants, the name of the potential plaintiff, and "give a brief

---

[18] Super. Ct. Civ. R. 12(b)(6).
[19] *Clinton*, 977 A.2d at 895.
[20] *Id.* (citing *Feldman v. Cutaia*, 951 A.2d 727, 731 (Del. 2008)).
[21] 18 *Del. C.* § 6856 ("No action for the recovery of damages upon a claim against a health-care provider for personal injury, including personal injury which results in death, arising out of medical negligence shall be brought after the expiration of 2 years from the date upon which such injury occurred.").
[22] *Id.* § 6856(4).
[23] *Id.*

6

description of the issue being investigated."[24] If an action is commenced during the ninety-day tolling period, "a copy of the notice shall be attached to the complaint to prove compliance with the statute of limitations."[25] While the entirety of Section 6856(4) is mandatory, a plaintiff need only strictly comply with the certified mail provision to successfully toll the statute.[26]

BNR contends the statute of limitations expired on May 18, 2022[27] and Plaintiff failed to satisfy the tolling requirements of § 6856(4). According to BNR, the December 23, 2021, Notice was deficient and therefore cannot toll the statute of limitations because it did not include the names of any agents or employees alleged to have provided treatment to Ms. Flamer, the consequences of the treatment, and the applicable standard of care.[28] BNR also argues that the person who signed for

[24] *Id.*

[25] *Id.* Only a copy of the May 19, 2022, Notice of Intent was attached to the Complaint; however, because the requirement is not a legal prerequisite and exists only to confirm the Notice of Intent letter was timely sent, where neither party has addressed that the December 23, 2021, Notice of Intent letter was not attached, the Court considers the matter waived. *See Farmer v. Brosch*, 8 A.3d 1139, 1142-43 (Del. 2010).

[26] *Verrastro v. Bayhealth Med. Ctr., Inc.*, 119 A.3d 676, 680 (Del. Super. 2015) ("[W]hile the certified mail provision of § 6856(4) requires strict compliance . . . the remaining provisions are guidelines . . .") (internal quotation marks omitted).

[27] BNR initially stated in its Opening Brief that the statute of limitations ran on May 15, 2022, the day Ms. Flamer was tested for COVID-19. *See* Def.'s Op. Br. at 15 n.20. However, in Plaintiff's Answer and Defendant's Reply, the parties state the statute of limitations ran on May 18, 2022; two years from when Ms. Flamer tested positive for COVID-19. Pl.'s Ans. Br. at 5-6; Def.'s Reply Br. at 6, Trans. ID 69247668 (Mar. 1, 2023).

[28] *See* Def.'s Op. Br. at 14-17. BNR maintains that the December 23, 2021 Notice fails to provide sufficient notice of the subject matter being investigated by the Plaintiff because it fails to provide "even the basic information (specific range of dates, specific event/injury/treatment, and location of treatment)." *Id.* at 17. BNR also argues that because the May 19, 2022, Notice of Intent was sent after the statute of limitations expired, it was untimely and cannot toll the statute. *Id.* at 15 n.20. Plaintiff did not address this argument in its briefing.

7

the Notice was not an employee of BNR and thus not authorized to accept it on BNR's behalf.[29] Plaintiff counters that the brief description set forth in the Notice is sufficient under 18 *Del. C.* § 6856(4) and applicable case law.[30]

BNR relies heavily on *Verrastro v. Bayhealth Med. Ctr., Inc.*[31] In *Verrastro*, the Court noted:

> [s]ection 6856(4) simply requires that a Notice of Intent contain three elements: (1) the name of the potential defendant or defendants; (2) the potential plaintiff; and (3) a brief description of the issue plaintiff's counsel is investigating.[32]

As the Court in *Verrastro* also notes, the Supreme Court has made clear that while the certified mail provision of §6856(4) requires strict compliance to toll the statute of limitations, the remaining provisions do not.[33] *Verrastro* found the below Notice of Intent met the "three minimally-required content elements":

> Plaintiffs' intent to investigate the facts leading to the death of Bridgett [sic] E. Verrastro, while she was a patient at Bayhealth Medical Center, Inc.—Milford Memorial and Kent General Hospitals, on or about August 12th through the 14th, 2012.[34]

---

[29] *Id.* at 15 n. 21.

[30] Pl.'s Ans. Br. at 7 (citing *Galate v. Beebe Medical Ctr., Inc.*, 2022 WL 1658370, at *6 (Del. Super. May 25, 2022)).

[31] 119 A.3d 676; Def.'s Op. Br. at 13-17.

[32] *Verrastro,* 119 A.3d at 680.

[33] *Id. See Farmer*, 8 A.3d at 1143 ("The remainder of Section 6856(4) lists additional procedural guidelines for the plaintiff to follow. Although these guidelines must be followed, they do not mandate additional hoops a plaintiff must jump through *before* he can toll the statute.") (emphasis in original).

[34] *Verrastro*, 119 A.3d at 679.

In *Galate v. Beebe Medical Ctr., Inc.*, the Court found the below was a sufficient "brief description" for purposes of tolling under § 6856(4):

> the issue being investigated . . . is the potential defendants' negligence in failing to timely diagnose and treat Mr. Galate for infection that ultimately led to his death.[35]

The Notice at issue here satisfies the requirements of 18 *Del. C.* § 6856(4). Plaintiff sent the Notice by certified mail, return receipt requested, to BNR at the address listed on the Delaware Division of Corporations website.[36] The Notice identifies the potential defendant and plaintiff and provides a brief description of the issue being investigated: whether the care and treatment rendered or not rendered to Ms. Flamer breached the standard of care and caused her to die from COVID-19 on June 18, 2020.[37] The Court finds the Plaintiff properly tolled the statute of limitations and timely filed the Complaint within the 90-day period under 18 *Del. C.* §6856(4).

**B.     The PREP Act**

   1.     The PREP Act is Not Applicable

---

[35] *Galate,* 2022 WL 1658370, at *6.

[36] Pl.'s Ans. Br. at Ex. A, Ex. B. While BNR may have sold its facility on May 31, 2021, BNR does not dispute Plaintiff's assertion that the Delaware Division of Corporations listed BNR's address as 505 Greenbank Road, Wilmington, DE 19808 at the time the Notice was sent. *Id.* at Ex. A. The statute requires the Notice of Intent be sent to Defendant's regular place of business. Plaintiff sent the Notice to where BNR was listed as doing business. This provision of the statute has been met. *See* 18 *Del. C.* § 6856(4).

[37] Pl.'s Ans. Br. at Ex. B.

9

The PREP Act, enacted in 2005, enables the Secretary of Health and Human Services ("HHS") to declare a public health emergency and "take such action as may be appropriate to respond to the public health emergency."[38] As such, the Secretary can make declarations recommending, among other things, the administration or use of covered countermeasures, and provide immunity with respect to such activities.[39] The immunity provision of the PREP Act states:

> a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure if a declaration under subsection (b) has been issued with respect to such countermeasure.[40]

"Thus, immunity is available where (i) a covered person; (ii) uses or administers a covered countermeasure; (iii) in the course of a recommended activity; and (iv) the plaintiff's claims have a causal relationship with the administration or use thereof."[41] Under the PREP Act, a covered countermeasure is a qualified pandemic or epidemic product; a security countermeasure; a drug, biological product, or device authorized for emergency use; or a respiratory protective device approved by the National Institute for Occupational Safety and Health (NIOSH) and determined by the Secretary to be a priority for use during a declared public health emergency.[42]

---

[38] 42 U.S.C. § 247d(a).

[39] 42 U.S.C. § 247d-6d(b)(1).

[40] *Id.* § 247d-6d(a)(1).

[41] *Smith v. Serafimova*, 2023 WL 3582388, at *5 (Del. Super. May 18, 2023) (citing 42 U.S.C. § 247d-6d).

[42] 42 U.S.C. § 247d-6d(i)(1).

On March 17, 2020, the Secretary issued a Declaration under the PREP Act in response to COVID-19, effective February 4, 2020.[43] The Declaration expands the definition of covered countermeasures to include:

> any antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom, or any device used in the administration of any such product, and all components and constituent materials of any such product.[44]

The Declaration was amended several times, and through these amendments NIOSH-approved respiratory protective devices and products limiting harms potentially caused by COVID-19 were recognized as covered countermeasures.[45]

BNR argues that the Complaint must be dismissed for lack of subject matter jurisdiction and failure to state a claim because the claims relate to and arise out of BNR's use and administration of covered countermeasures, falling within the broad scope of PREP Act immunity.[46] First, BNR asserts that covered countermeasures are broadly defined and include items such as PPE, hand sanitizer, and COVID-19 tests, among other things, because they are devices used to prevent or mitigate COVID-19.[47] Second, BNR argues that administration is broadly defined, and includes: activities, decisions, management, and operations relating to covered

---

[43] Declaration Under the PREP Act, 85 Fed. Reg. 15,198-99 (Mar. 17, 2020).
[44] *Id.* at 15,199.
[45] Second Amendment to the Declaration, 85 Fed. Reg. 35,100-01 (June 8, 2020); Amendment to the Declaration, 85 Fed. Reg. 21,012-13 (Apr. 15, 2020).
[46] *See* Def.'s Op. Br. at 17-30.
[47] *Id.* at 28-29.

11

countermeasures, and even extends to the conscious decision not to use a covered countermeasure.[48] In support of this argument, BNR relies on the Fourth Amendment to the Declaration, which states: ". . .there can be situations where not administering a covered countermeasure to a particular individual can fall within the PREP Act. . ."[49] and incorporates Health and Human Services Advisory Opinions.[50] BNR specifically points to Advisory Opinion 21-01, which asserts that immunity applies to non-use of covered countermeasures where the non-use was a conscious decision pertaining to resource allocation.[51] BNR asserts that "by claiming that [BNR] was negligent in failing to prevent the spread of COVID-19 in the subject facility, Plaintiffs place into issue [BNR's] use and administration of such covered countermeasures for infection control."[52] In short, BNR maintains that because covered countermeasures may have been used at its facility, Plaintiff's allegations trigger immunity.

---

[48] *Id.* at 20-23, 27-31.

[49] Fourth Amendment to the Declaration, 85 Fed. Reg. 79,190-91 (Dec. 9, 2020).

[50] *See* 85 Fed. Reg. at 79,197 ("[T]he Declaration must be construed in accordance with the [Advisory Opinions]. ("Where there are limited Covered Countermeasures, not administering a Covered Countermeasure to one individual in order to administer it to another individual can constitute "relating to . . . the administration to . . . an individual" under 42 U.S.C. 247d-6d.")).

[51] Def.'s Op. Br. at 23 (citing Advisory Op. 21-01 at 3-4). While the Fourth Amendment to the Declaration incorporates the Advisory Opinions, the General Counsel advises that they "do not create binding legal norms," and acknowledges that they lack the "force and effect of law." *HHS Advisory Opinions* (June 24, 2021), https://hhs.gov/about/agencies/ogc/advisory-opinions/index.html.

[52] Def.'s Op. Br. at 29. BNR argues that Plaintiff's allegation that it failed to follow PPE protocols "relates to" the administration and use of a covered countermeasure. *Id.* 30-31.

In response, Plaintiff argues BNR is attempting to repackage the argument it asserted in *Hansen v. Brandywine Nursing & Rehab. Ctr., Inc.* ("*Hansen I*"),[53] now using immunity "as a sword to dismiss rather than a shield to attempt to defend from remand."[54] Plaintiff contends that the Court has subject matter jurisdiction to hear the case because in *Hansen I*, the District of Delaware remanded the case, holding that the claims are state law claims and therefore belong in state court.[55] Plaintiff further argues her claims are analogous to those in *Hansen v. Brandywine Med. Ctr., Inc.* ("*Hansen II*")[56] and thus do not implicate PREP Act immunity.[57]

In *Hansen II*, the Court addressed PREP Act immunity and held that infectious disease protocols are not covered countermeasures.[58] *Hansen II* involved nearly identical claims against the same defendant as in the instant case. In *Hansen II*, the Court rejected BNR's argument that claims concerning staffing, screening, and PPE

---

[53] 2022 WL 608968, at *1-2 (D. Del. Jan. 19, 2022).

[54] Pl.'s Ans. Br. at 13.

[55] 2022 WL 608968, at *3 ("'[Plaintiffs] filed in state court and asserted only garden-variety state-law claims, so state court is where these cases belong.'") (citing *Maglioli v. Alliance HC Holdings LLC*, 16 F.4th 393, 413 (3d Cir. 2021)). The Court relied on *Maglioli*, which held that removal was not proper because the PREP Act does not completely preempt the claims nor present a substantial federal question under the *Grable* doctrine. *See Maglioli*, 16 F.4th at 406-13.

[56] *Hansen v. Brandywine Nursing and Rehab. Ctr., Inc.*, 2023 WL 587950, at *3 (Del. Super. Jan. 23, 2023) [hereinafter *Hansen II*], *cert. denied*, *Hansen v. Brandywine Nursing and Rehab. Ctr., Inc.*, 2023 WL 2199610 (Del. Super. Feb. 24, 2023), *appeal refused*, *Hansen v. Brandywine Nursing and Rehab. Ctr., Inc.*, 294 A.3d 64, 2023 WL 2544241 (Del. Mar. 16, 2023) (TABLE).

[57] Plaintiff here alleges in the Complaint that BNR was negligent in failing to follow proper procedures, isolation techniques, and prevention and control techniques. Compl. ¶ 29-31; *see id.* ¶ 35.

[58] *Hansen II*, 2023 WL 587950, at *5.

protocols fell within the scope of PREP Act immunity.[59] The Court found that BNR "confuse[d] suits over the administration of a countermeasure itself – which is clearly immunized – with suits concerning prevention of infection."[60] The Court further held that BNR's suggestion that covered countermeasures "include basic infectious disease prevention is beyond broad – it is unreasonable."[61]

Similarly in *Santo v. Genesis Healthcare, Inc.*, the Court found the PREP Act does not provide "blanket immunity to a covered person (e.g. a facility) merely on account of that entity's having used or administered covered countermeasures in order to prevent the spread of COVID-19."[62] The Court further noted that there must be a "causal relationship" to the use or administration of a covered countermeasure to be covered under the PREP Act.[63]

Other state and federal courts have similarly held that not all disease prevention measures are immunized under the PREP Act.[64] The rationale behind these courts' holdings is consistent: not all preventative measures are

---

[59] *Id.* at *6.
[60] *Id.*
[61] *Id.*
[62] 2023 WL 3493880, at *5 (Del. Super. May 16, 2023).
[63] *Id.*
[64] *See, e.g.*, *Robertson v. Big Blue Healthcare, Inc.*, 523 F.Supp.3d 1271, 1282-83 (D. Kan. 2021) (holding that claims regarding preventative measures do not fall within the scope of the PREP Act); *Arbor Mgmt. Servs., LLC v. Hendrix*, 875 S.E.2d 392, 397 (Ga. Ct. App. 2022) ("[T]he allegedly wrongful conduct is based on decisions . . . regarding visitation, staffing, recreation, and socialization – conduct that has nothing to do with the administration of a 'covered countermeasure' such as a drug, device, or other object. . .").

14

countermeasures,[65] and failure to employ a covered countermeasure does not constitute administration of a countermeasure.[66] BNR relies heavily on the Fourth Amendment to the Declaration to support its argument that nonuse constitutes a covered countermeasure; however, courts have consistently held that inaction claims are narrowly construed.[67] As the Court in *Hansen II* explained, the history of the PREP Act "demonstrates that the immunity provided for in the Act exists to guarantee a supply of vaccines and related countermeasures in the event of a public

[65] *Tercero v. Orinda Care Ctr., LLC*, 2022 WL 256511, at *2 (N.D. Cal. Jan. 3, 2022) (holding "failure to screen employees before allowing them to return the facility, or not employing social distancing measures, or discontinuing group activities, or failure to maintain isolation for sick individuals" are not countermeasures under the PREP Act); *Rosen v. Montefiore*, 582 F.Supp.3d 553, 560 (N.D. Ohio 2022) ("handwashing and masks are not covered countermeasures.").

[66] *See, e.g.*, *Hansen II*, 2023 WL 587950, at *8; *Est. of Maglioli*, 478 F.Supp.3d 518, 533 (D.N.J. 2020) (affirmed by *Est. of Maglioli*, 16 F.4th 393) ("[T]he PREP Act [] is designed to protect those who employ countermeasures, not those who decline to employ them."); *Eaton v. Big Blue Healthcare, Inc.*, 480 F.Supp.3d 1184, 1193 (D. Kan. 2020) (". . .PREP Act applies to action, not inaction."); *Est. of Jones v. St. Jude Operating Co., LLC*, 2020 WL 8361924, at *10 (D. Or. Oct. 14, 2020) (concluding that allegations regarding "what [d]efendants failed to do to stop the entry and spread of COVID-19," do not constitute improper administration or misuse of covered countermeasures); *Smith v. Colonial Care Ctr., Inc.*, 2021 WL 1087284, at *4 (C.D. Cal. Mar. 19, 2021) (holding that claims regarding the defendant's failure to implement policies to protect residents against COVID-19 are not immune from suit under the PREP Act); *Whitehead v. Pine Haven Operating LLC*, 170 N.Y.S.3d 855, 860 (N.Y. Sup. Ct. 2022) ("Allegations such as . . . failing to enforce social distancing, failing to timely restrict visitors, failing to insure all residents and staff wore face coverings, failure to screen staff and visitors, and failing to discontinue group activities[] do not amount to the administration of countermeasures . . .").

[67] *See Gwilt v. Harvard Square Ret. & Assisted Living*, 537 F.Supp. 1231, 1241 (D. Colo. 2021) (stating that "[e]ven if the Fourth Amendment provides support that the PREP Act applies to inaction or failure," there were no allegations that the prioritization or purposeful allocation of a countermeasure caused loss); *see also Lyons v. Cucumber Holdings*, LLC, 520 F.Supp.3d 1277, 1285 (C.D. Cal. 2021) (stating that "such claims only fall under the scope of the PREP Act where: (1) there are limited covered countermeasures; and (2) there was a failure to administer a covered countermeasure to one individual because it was administered to another individual."); *Robertson*, 523 F.Supp.3d at 1284 ("There are no allegations in this case that the loss was caused by the non-use or non-administration of covered countermeasures <u>linked</u> to the use or administration of that countermeasure to another person instead.") (emphasis in original).

15

health emergency. The immunity ensures that drug manufacturers will not be sued should the vaccine or other government-ordered countermeasure turn out to be defective or harmful."[68]

As in *Hansen II*, the claims here concern infectious disease protocols. The Complaint, read in the light most favorable to the Plaintiff, alleges Ms. Flamer died from COVID-19 as a result of the negligent failure to protect her through infectious disease protocols,[69] "rather than from any affirmative efforts to treat the disease or administer countermeasures as would be required under the Act's rubric."[70] The Plaintiff's claims do not fall within the scope of the PREP Act.

## V. CONCLUSION

For the aforementioned reasons, BNR's Motion to Dismiss based on the Statute of Limitations and PREP Act immunity is **DENIED.**

**IT IS SO ORDERED**.

/s/ Jan R. Jurden
Jan R. Jurden, President Judge

cc:     Prothonotary

---

[68] 2023 WL 587950, at *3.

[69] *See* Compl. ¶¶ 29(c), 35(n). Alleging Ms. Flamer's death was the result of failures such as failing to isolate presumptively positive patients and to disinfect communal areas per CDC guidelines. *Id.*

[70] *Tercero*, 2022 WL 256511, at *2. *See also Est. of Maglioli*, 478 F.Supp.3d at 529 ("Nothing in the language of the Act suggests that it was intended to more broadly displace state-law causes of action . . . even if proper care possibly *would* have entailed administration of such countermeasures.") (emphasis in original).